[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 831 
L. Robert Mendel, DMD; Family Dental Associates ("Family Dental"); and Mobile Family Dental ("Mobile Family") (collectively "the defendants") petition for a writ of mandamus directing the Mobile Circuit Court to vacate its October 3, 2005, order compelling production of documents in an action brought against them by Jacqueline R. Previto. We grant the petition *Page 832 
in part and deny the petition in part, and we issue the writ.
Facts as Alleged in Previto's Complaint
Our sole source of information concerning the underlying events comes from the complaint Previto filed to institute her action. She avers in the complaint that on September 19, 2002, she sought the advice of Dr. Mendel regarding the possibility of remedying, through the use of dental implants, a dental condition from which she suffered. Dr. Mendel recommended dental implants as the best option and treatment for Previto's condition. Dr. Mendel explained to Previto that although dental implants were more expensive than alternative dental-care options, the superior results would be worth the extra expense; he additionally represented to her that he was "as competent, skilled and capable of performing the various phases of the implant surgery as other dentists." However, Dr. Mendel "at no time mentioned to [Previto] that his license had been suspended on numerous occasions by various dental boards in more than one state."
Dr. Mendel performed the dental-implant surgery on Previto on November 25, 2002. She contends that during the procedure Dr. Mendel punctured the floor of her right maxillary sinus, that he incorrectly placed the implants in her mouth, and that he failed to complete the surgery. Finally, Previto alleges, neither Dr. Mendel nor his staff ever sought to correct or remedy the mistakes they allegedly made. She asserts that at all times Dr. Mendel was working within the line and scope of his employment with Family Dental and Mobile Family.
Previto sued Dr. Mendel, Family Dental, and Mobile Family in 2004, stating five "causes of action" for which she sought relief. The first "cause of action" was premised on liability under the Alabama Medical Liability Act, Ala. Code 1975, § 6-5-480 et seq. and § 6-5-540 et seq., based on the defendants' alleged numerous specified negligent acts or omissions. Among those alleged acts and omissions were the defendants' failure to obtain Previto's "informed consent" to undergo the surgery and their failure to "inform and/or disclose to [Previto] that [Dr. Mendel's] license to practice dentistry had been suspended and/or revoked on multiple occasions." Previto's second cause of action was based on the defendants' alleged breach of contract. The third cause of action was based on the defendants' alleged misrepresentations to Previto regarding the care and competence with which the procedure would be conducted. Previto's fourth cause of action was based on alleged "fraudulent misrepresentation" by Dr. Mendel, who, Previto argues, as her regular dentist "was under an obligation to communicate to [her] the fact that his license had been suspended in numerous States by governing dental boards and associations," but who "at no time communicated to [her] that his license to practice dentistry had every [sic] been suspended and/or revoked for any period of time." Previto asserted that that information constituted "a material fact," which, had she known it, would have caused her to refrain from undergoing the surgery. Previto's fifth and final cause of action was based on the defendants' alleged willful misrepresentation of Dr. Mendel's competence and willful failure to disclose that "he had been reprimanded by numerous dental review boards and had received suspensions and/or revocations in numerous states."
Of particular importance to this petition are the portions of Previto's complaint alleging that Dr. Mendel had failed to disclose to her that he had been reprimanded by numerous dental review boards and that his dental license had been suspended or revoked on "multiple occasions" in numerous *Page 833 
states; thus, she says, he failed to obtain her informed consent to the surgery and misrepresented and/or suppressed material facts.
On December 22, 2004, Previto noticed her intent to serve a subpoena upon the Alabama Board of Dental Examiners ("the Dental Board"). That subpoena (hereinafter referred to as "the Dental Board subpoena") would command the Dental Board to produce
 "any and all reports, correspondence, memoranda, notes, complaints, files, and all other documents or materials of any type, kind or description, whether in written, printed or electronic form, which reference or in any way relate to [Dr. Mendel] and his practice of dentistry and/or implant dentistry and/or dental surgery, including, but not limited to, any and all complaints filed against Dr. Mendel, and all documents and materials of any type, kind or description which reference or in way [sic] relate to any such complaints."
The defendants objected to the Dental Board subpoena and moved to quash it, asserting that the materials sought were "privileged and protected" under § 6-5-551 and §6-5-333(d), Ala. Code 1975. Previto filed a response, with a supporting brief, to the defendants' objection to, and motion to quash, the Dental Board subpoena, and the Dental Board filed its own "motion to quash and/or objection" to the proposed subpoena. Shortly after they moved to quash the Dental Board subpoena, the defendants moved for a partial summary judgment, contending that because a dentist has no common-law or statutory duty to disclose professional reprimands or licensure suspensions or revocations to his patients, Previto's "licensure claims" did not represent cognizable causes of action and therefore were due to be dismissed.
The trial court denied the defendants' motion for a partial summary judgment, as well as their subsequent motion to reconsider, and their motion to certify the underlying issue for permissive appeal pursuant to Rule 5, Ala.R.App.P.
On June 9, 2005, Previto noticed the video deposition of Dr. Mendel. In her notice, which contained a section labeled "duces tecum," Previto requested that Dr. Mendel produce some 22 types of documents, including:
 "18. Full and complete copies of any and all notes, memorandums, correspondence, e-mails, files, forms or other documents, whether in written or electronic form, which would in any way relate to any revocation, suspension or termination of any medical or dental license held by [Dr. Mendel] in any State or country."
The defendants objected to the "duces tecum" feature of the notice (referring to it as a "subpoena duces tecum"; the notice, therefore, is hereinafter referred to as "the Mendel subpoena"), and moved to quash it, or, in the alternative, for a protective order, relying in part, again, on § 6-5-551, Ala. Code 1975.
On June 27, 2005, the trial court denied in part the respective motions of the defendants and the Dental Board to quash the Dental Board subpoena stating, however, "that the [Dental] Board shall produce any formal notice of charges, final order or transcript of proceeding involving any matter resulting in formal discipline against [Dr. Mendel] or any non-privileged documents which resulted in a finding of a violation of the Alabama Dental Practice Act." The court granted those motions "[i]n all other respects"; it did not address the defendants' objection to and motion to quash the Mendel subpoena. *Page 834 
On July 1, the defendants filed a motion seeking a protective order relating to the June 27 order and a motion requesting that the court review in camera any documents produced by the Dental Board pursuant to that order to determine whether it should enter a protective order "relative to same," referencing once again § 6-5-551 and 6-5-333(d), Ala. Code 1975. At some point, not identified by the parties' submissions, the Dental Board produced certain materials for the court's in camera inspection.
On July 7, 2005, the court conducted a hearing on the defendants' motion for a protective order, their motion for anin camera inspection, and their still-pending objection to and motion to quash the Mendel subpoena. On October 3, 2005, the court entered an order denying the defendants' motion for a protective order; that order states:
 "[T]he defendants' motion for protective order is hereby DENIED. Those in camera materials received from the [Dental Board] will remain within the court file, under seal. The [Dental Board] is ordered to produce those same materials, in compliance with this Court's order of June 27, 2005, not before the seventh (7th) day after execution of this order."
With respect to the Mendel subpoena, the order stated:
 "After due consideration of the arguments by counsel for all parties, written briefs, exhibits, review of the court file, and an in camera
inspection, the court finds and hereby orders that the defendants' objection and motion to quash, or, in the alternative, motion for protective order is hereby DENIED."
The court had implicitly granted the defendants' motion for an in camera inspection and had conducted the inspection.
The defendants timely petitioned this Court for a writ of mandamus directing the trial court to vacate its October 3 discovery order and requiring "the lower court to enter a protective order regarding the proffered `licensure' discovery, whether relative to the [Dental Board subpoena] or [the Mendel subpoena]." As they had in the trial court, the defendants contended that the discovery was precluded by § 6-5-551 and6-5-333(d). We ordered answer and briefs on the issue "whether the trial court's order . . . disregarded a privilege."
 Standard of Review [1] "Mandamus is an extraordinary remedy and will be granted only when there is `(1) a clear legal right in the petitioner to the order sought, (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so, (3) the lack of another adequate remedy, and (4) properly invoked jurisdiction of the court.'"
Ex parte Dillard Dep't Stores, Inc.,879 So.2d 1134, 1136 (Ala. 2003) (quoting Ex parte Alfab, Inc.,586 So.2d 889, 891 (Ala. 1991)).
Although this Court no longer routinely reviews discovery orders by way of petitions for an extraordinary writ, we do review such orders under a limited number of circumstances that indicate an exceptional case. Ex parte Ocwen Fed. Bank,FSB, 872 So.2d 810 (Ala. 2003). One such circumstance is when a trial court grants discovery in disregard of a privilege. "This Court has recognized that review by appeal is inadequate when it is alleged that the trial court has improperly disregarded a claim of privilege or confidentiality." Exparte Gadsden Reg'l Med. Ctr., 904 So.2d 234, 235
(Ala. 2004). The burden to prove that the petition presents such an exceptional case rests with the petitioner. Ex parteOcwen, *Page 835 872 So.2d at 814. As noted, in this case the Court has limited its review to whether the Mobile Circuit Court's October 3, 2005, order disregarded a privilege.
Analysis
The defendants first argue that we should grant their petition because, they say, Ala. Code 1975, § 6-5-551, makes privileged all information concerning "any other act or omission" than the one on which the complaint is specifically based.
Ala. Code 1975, § 6-5-551, part of the Alabama Medical Liability Act, provides, in pertinent part:
 "In any action for injury, damages, or wrongful death, whether in contract or in tort, against a health care provider for breach of the standard of care, whether resulting from acts or omissions in providing health care, or the hiring, training, supervision, retention, or termination of care givers, the Alabama Medical Liability Act shall govern the parameters of discovery and all aspects of the action. The plaintiff shall include in the complaint filed in the action a detailed specification and factual description of each act and omission alleged by plaintiff to render the health care provider liable to plaintiff and shall include when feasible and ascertainable the date, time, and place of the act or acts. . . . Any party shall be prohibited from conducting discovery with regard to any other act or omission or from introducing at trial evidence of any other act or omission."
(Emphasis added.)
Rule 26(b)(1), Ala. R. Civ. P., provides, in pertinent part:
 "Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party. . . . It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence."
(Emphasis added.)
Previto argues that § 6-5-551 does not grant aprivilege to a party; rather, she says, the statute creates only a discovery "exemption." (Previto's brief, at 19.) Indeed, we explained in Ex parte Anderson,789 So.2d 190, 195 (Ala. 2000): "[i]f all conditions of [§ 6-5-551] are met, then any other acts or omissions of the defendant health-care provider are exempt from discovery." (Emphasis added.)
Rule 26 contemplates only two circumstances that will render information nondiscoverable: either the information is irrelevant or it is privileged. There is a third possibility, however — the legislature can change the procedural rules by which the courts operate. For example, in State v.Bragg, 710 So.2d 417, 418-19 (Ala. 1998), this Court compared Rule 26(b)(1), Ala. R. Civ. P., with Ala. Code 1975, § 18-1A-130, a statute that prohibits the discovery in an eminent-domain case of appraisal reports valuing another's property. Although we did not conclude that the appraisal reports sought by the respondent were either irrelevant or privileged, we nevertheless found that the statute had supplemented Rule 26(b)(1) so as to "exempt appraisal reports in condemnation cases from discovery." 710 So.2d at 419. In reaching our decision, we quoted § 6.11 of Amendment No. 328
to the Alabama Constitution 1901, which provides that the rules promulgated by this Court (e.g., the Alabama Rules of Civil Procedure) "`may be changed by a general act of statewide application.'" 710 So.2d at 418. In Ex parte Ridgeview *Page 836 Health Care Center, Inc., 786 So.2d 1112
(Ala. 2000), we again found that the legislature had carved out an exception to the discovery rules promulgated by this Court, this time in the Alabama Medical Liability Act of 1996, Ala. Code 1975, § 6-5-548(d), which declares, in pertinent part, that "[t]he limits of liability insurance coverage available to a health care provider shall not be discoverable. . . ."
The term "privilege" is sometimes used to describe a relationship or transaction immunized by law so that no legal liability can result from the relationship or transaction; the term is sometimes used to describe written or oral communications, which, because of the nature of the relationship or transaction, are confidential and protected from disclosure; and the term is often used to describe the coexistence of both the relationship or transaction and the communications. In its broadest sense, a privilege is simply "[a] special legal right, exemption, or immunity granted to a person or class of persons; an exception to a duty." Black's Law Dictionary 1234 (8th ed.2004). In both Ex parte Norfolk Southern R.R.,897 So.2d 290 (Ala. 2004), and Ex parte Alabama Departmentof Youth Services, 927 So.2d 805 (Ala. 2005), proceeding under the Ocwen approach, we characterized the protection afforded trial-preparation materials under Rule 26(b)(3) as a "privilege," despite the fact that this subdivision of Rule 26 first states that such materials must be "otherwise discoverable under subdivision (b)(1)," which, in turn, requires that discoverable material be "not privileged." Rule 26(b)(3) goes on to state simply that a party may obtain discovery of trial-preparation materials only upon a showing of substantial need and that he or she is "unable without undue hardship to obtain the substantial equivalent of the materials by other means." Finally, Rule 26(b)(5) acknowledges the conceptual distinction between information that is "privileged" and information "subject to protection as trial-preparation materials." Therefore, by our approach in NorfolkSouthern and Department of Youth Services, we have elected, in the context of post-Ocwen mandamus review, to treat the conditional exemption from discovery of trial-preparation materials afforded by Rule 26(b)(3) as implicating a "privilege." Given the absolute bar against certain discovery erected by § 6-5-551, we deem it appropriate like-wise to treat the exemption from discovery offered by that statute as a privilege, for purposes of the Ocwen standard.
As noted, the trial court denied the defendants' motion for a partial summary judgment on Previto's "licensure claims," i.e., those claims alleging lack of informed consent and fraudulent misrepresentation, and refused to certify the underlying question of law for possible interlocutory appeal pursuant to Rule 5, Ala. R.App. P. Accordingly, at this stage of the proceedings, those claims stand as acts and omissions pleaded pursuant to § 6-5-551 and, consequently, serve as a platform under that Code section for discovery "with regard to" the same. We are not in a procedural posture in this mandamus proceeding to assess the substantive viability of those claims. Consequently, we express no opinion whether a physician, in order to obtain the patient's informed consent, may have an affirmative duty to disclose to the patient information regarding suspensions or revocations of the physician's license. Under the express language of § 6-5-551, however, we look only to the "detailed specification and factual description" of those alleged acts and omissions, as pleaded by Previto, and any attempt by her to recharacterize those acts and omissions to the trial court or to this Court, without amending her complaint, must be disregarded. *Page 837 
Previto's lack-of-informed-consent claim is expressly premised on Dr. Mendel's alleged failure to inform or disclose to her that his "license to practice dentistry had been suspended and/or revoked on multiple occasions." Similarly, her misrepresentation claims assert that Dr. Mendel affirmatively represented his competence and qualification to perform the implant surgery and, despite his status as Previto's "regular dentist," making their relationship a "confidential" one, that he failed to communicate to her "the fact that his license had been suspended in numerous States by governing dental boards and associations." As an additional gloss, she alleges in her complaint as follows:
 "[Dr. Mendel] did wilfully misrepresent that he was competent, capable, qualified and otherwise able to perform the aforesaid dental implant surgery in a non-negligent and professional manner on September 19, 2002. Further, [Dr. Mendel] wilfully failed to disclose the fact that he had been reprimanded by numerous dental review boards and had received suspensions and/or revocations in numerous states.
 "The aforesaid representations were done in a manner so as to deceive and mislead [Previto] and to further induce [Previto] to enter into an agreement to have the dental implant surgery which began on November 25, 2002.
 "[Previto] further alleges that as a result of the aforesaid misrepresentations, [Previto] elected to undergo the dental implant surgery. These representations were a material element in that decision."
Therefore, the issue for this Court to resolve in applying the discovery exemption of § 6-5-551 to the acts and omissions pleaded in Previto's complaint is whether the discovery ordered by the trial court is "with regard to" those acts and omissions.
 "The elements of a cause of action against a physician for failure to obtain informed consent are: (1) the physician's failure to inform the plaintiff of all material risks associated with the procedure, and (2) a showing that a reasonably prudent patient, with all the characteristics of the plaintiff and in the position of the plaintiff, would have declined the procedure had the patient been properly informed by the physician. Fain v. Smith, 479 So.2d 1150
(Ala. 1985); Fore v. Brown, 544 So.2d 955
(Ala. 1989)."
Phelps v. Dempsey, 656 So.2d 377, 380 (Ala. 1995).
"A physician is not required to inform the patient of each and every risk in a particular procedure; however, the doctor should inform the patient of the `significant perils' involved in the procedure. Otwell v. Bryant,497 So.2d 111, 118 (Ala. 1986)." Craig v. Borcicky,557 So.2d 1253, 1258 (Ala. 1990).
Therefore, as controlled by Previto's detailed specification and factual description in her complaint of Dr. Mendel's alleged failure to obtain her informed consent, the discovery of information about previous suspensions and/or revocations of his license to practice dentistry is not prohibited by § 6-5-551 to the extent the information reflects multiple suspensions and/or revocations, and provided further that the revocations or suspensions relate to negligence or professional incompetence in the practice of dentistry. Discovery of any materials or information not having that direct relevance to the claim of lack of informed consent as pleaded by Previto is prohibited by § 6-5-551. See Exparte Anderson, 789 So.2d 190, 195, 198 (Ala. 2000); andEx parte Ridgeview Health Care Ctr.,786 So.2d at 1116-17. *Page 838 
We next consider the effect of the discovery exemption in §6-5-551 in light of Previto's fraudulent-misrepresentation claims. In Johnson v. McMurray, 461 So.2d 775
(Ala. 1984), this Court had the following to say concerning a patient's claim of fraud against his doctor:
 "This Court has determined that the relationship between a doctor and his patient is a `confidential' one. Hudson v. Moore, 239 Ala. 130, 194 So. 147 (1940). The policy considerations for confidentiality in the doctor/patient relationship are grounded in the necessity on the part of the patient to fully disclose to his doctor all information essential to the patient's proper diagnosis and treatment, and in the corresponding duty on the part of the doctor to fully disclose to the patient facts necessary to enable the patient to intelligently exercise his right to control, to the extent feasible, his own health care."
461 So.2d at 778.
As noted, Previto charges in her complaint that Dr. Mendel misrepresented his competence and qualification to perform dental-implant surgery and suppressed information that his "license to practice dentistry has been suspended and/or revoked on multiple occasions" and that "he had been reprimanded by numerous dental review boards and had received suspensions and/or revocations in numerous states." Given the procedural posture in which this case reaches us, we will assume, but need not decide, that Dr. Mendel owed Previto a duty to disclose "multiple" suspensions or revocations; reprimands by "numerous" dental review boards; or suspensions or revocations in "numerous" states. Only a quantity of such sanctions corresponding to the magnitudes specifically pleaded would qualify that information for discovery as being "with regard to" the detailed specifications and factual descriptions of the acts or omissions alleged in the complaint.
Therefore, given the scope of discovery arising from the specific acts and omissions pleaded by Previto, we hold that she may discover from Dr. Mendel the matters explained above with respect to her claims of lack of informed consent and fraudulent misrepresentation.
Section 6-5-333(d), Ala. Code 1975, provides:
 "All information, interviews, reports, statements, or memoranda furnished to any committee as defined in this section, and any findings, conclusions, or recommendations resulting from the proceedings of such committee are declared to be privileged. The records and proceedings of any such committees shall be confidential and shall be used by such committee and the members thereof only in the exercise of the proper functions of the committee and shall not be public records nor be available for court subpoena or for discovery proceedings. Nothing contained herein shall apply to records made in the regular course of business by a hospital, dentist, dental auxiliary personnel, chiropractor, chiropractic auxiliary personnel, physician, physician auxiliary personnel, or other provider of health care and information, documents, or records otherwise available from original sources are not to be construed as immune from discovery or use in any civil proceedings merely because they were presented during proceedings of such committee."
Previto argues that § 6-5-333 has no application to the Dental Board because, she says, its title refers to various types of committees without specifically naming the Dental Board, and its text does not otherwise reference the Dental Board. Section 6-5-333(d) declares that various information furnished to or generated by a *Page 839 
"committee" as defined in that section is privileged, confidential, and not a public record or otherwise available for court subpoena or for discovery. Section 6-5-333(b) defines a "committee" for the purposes of § 6-5-333 as follows:
 "Members of a committee of dentists, chiropractors, or physicians licensed to practice medicine in Alabama formed or appointed to evaluate the diagnosis or the performance of services of other dentists or dental auxiliary personnel, chiropractors or chiropractic auxiliary personnel or physicians licensed to practice medicine in Alabama or physician auxiliary personnel when such evaluation is requested by a government agency, by the fiscal intermediary responsible for the administration of group health care programs, by the recipient of dental, chiropractic, or medical services, or by a dentist, chiropractor, or physician licensed to practice medicine in Alabama."
The composition and some of the functions of the Dental Board bring it within that definition of committee. The Dental Board consists "of five dentists who shall have been actively engaged in the practice of dentistry in the State of Alabama for at least five years next preceding the date of their election" and one dental hygienist. Ala. Code 1975, § 34-9-40(a). Among its assigned "powers and duties," the Dental Board is mandated to "[p]rescribe rules for qualifications and licensing of dentists and dental hygienists"; to conduct examinations to ascertain their qualification and fitness for licensing; to grant licenses to qualified dentists and dental hygienists; to "[c]onduct hearings or proceedings to impose the penalties specified in Section 34-9-18"; and to "[i]nvestigate alleged violations of this chapter and institute or have instituted before the board or the proper court appropriate proceedings regarding the violation." § 34-9-43.
Section 34-9-18, in turn, authorizes the Dental Board to "invoke disciplinary action" and to impose sanctions, including license revocation or suspension, against any dentist who has been "guilty of gross negligence in the practice of dentistry" or "[h]as had his or her license to practice dentistry . . . from another state suspended or revoked based upon acts similar to those described in this section." Although Chapter 9 of the Alabama Code, entitled "Dentists and Dental Hygienists," assigns various other powers and duties to the Dental Board, many of which would not relate to the functioning of a "committee" under § 6-5-333(b), the Dental Board does in fact have as an important part of its functions the evaluation of the performance of services of dentists. Accordingly, applying the plain language of § 6-5-333(b) to the composition and functions of the Dental Board, we conclude that it comes within the definition of a "committee" under § 6-5-333(b).
Previto also argues that under the Alabama Administrative Procedure Act, Ala. Code 1975, § 41-22-1 et seq., the workings of the Dental Board must be open and accessible to the public. She cites specifically §41-22-4(a)(4), which states that agencies such as the Dental Board must "[m]ake available for public inspection and copying . . . all final orders, decisions, and opinions . . ., except those expressly made confidential or privileged by statute or order of court." Section 6-5-333(d) expressly makes confidential and privileged materials that would constitute "final orders, decisions, and opinions" of the Dental Board.
Finally, Previto contends that even if §6-5-333(d) is applicable to certain materials in the possession of the Dental Board, that statute would apply only to those documents that "were prepared *Page 840 
in furtherance of the committee's function," citing Exparte Anderson, 789 So.2d 190, 199 (Ala. 2000). In analyzing the scope of discovery barred, and permitted, by §6-5-333(d), the Court stated in Anderson:
 "The clear import of this statute is that official committee documents, which would include information regarding whether [the defendant physician's] privileges have ever been reviewed, restricted, or canceled, that were prepared in furtherance of the committee's function, are privileged from discovery. However, records made in the regular course of business, exclusive of official committee functions, and otherwise available from their original sources, are discoverable and not privileged. Thus, [the plaintiff patient] is not entitled to discover records or documents prepared by a hospital or other health-care provider unless they were prepared in its regular course of business. . . ."
In Anderson, the plaintiff patient, in seeking discovery directly from the defendant physician, requested that the physician acknowledge whether his "`medical, surgical or staff privileges have ever been reviewed, restricted or cancelled by any hospital or by any Medical Licensure Commission in any state in which [he has] been licensed. . . .'"789 So.2d at 192-93. This Court concluded that "discovery of information regarding [the physician's] privileges is barred by § 6-5-333(d)." 789 So.2d at 199. The Court did note that under that Code section the plaintiff could discover records or documents prepared by a hospital or other health-care provider "in its regular course of business" and that the plaintiff was "not precluded from seeking the same from [the physician] as the original source." 789 So.2d at 199. Obviously, "the same" refers to records or documents prepared by a hospital or other health-care provider in its regular course of business. As the Court had earlier explained, "records made in the regular course of business, exclusive of official committee functions,
and otherwise available from their original sources, are discoverable and not privileged." 789 So.2d at 199 (emphasis added).
The import of those statements in Anderson can best be understood in the context of two other opinions this Court also issued in 2000, concerning access from "original sources," in connection with another statute, § 22-21-8, Ala. Code 1975. After declaring that "[a]ll accreditation, quality assurance credentialing and similar materials shall be held in confidence and shall not be subject to discovery," §22-21-8(b) states, in language quite similar to the language used in § 6-5-333(d), that "[i]nformation, documents, or records otherwise available from original sources are not to be construed as being unavailable for discovery . . . merely because they were presented or used in preparation of accreditation, quality assurance or similar materials. . . ."
In Ex parte Krothapalli, 762 So.2d 836
(Ala. 2000), the Court, construing that language, stated:
 "[Section] 22-21-8 does not protect information if it is obtained from alternative sources. Hence, a plaintiff seeking discovery cannot obtain directly from a hospital review committee documents that are available from the original source, but may seek such documents from the original source. Therefore, the trial court erred in ordering that these documents from the two hospitals be turned over to the plaintiff."
762 So.2d at 839.
In Ex parte Qureshi, 768 So.2d 374 (Ala. 2000), the Court reviewed a trial court's order requiring a hospital to produce documents pertaining to a defendant physician's *Page 841 
"qualifications, training, education, and board certification in the field of orthopedic surgery,"768 So.2d at 375, and correspondence between the hospital and the American Board of Orthopaedic Surgeons or any other institution or hospital, or documents received by the hospital from any such organization, pertaining in any way to the physician. Concluding that those materials were barred under § 22-21-8, the Court stated, "we note, however, that Krothapalli allows the discovery of these documents from the original sources."768 So.2d at 378. In directing the trial court to vacate its order requiring the hospital to produce those documents "that were received from outside sources," the Court reiterated, "[n]either our decision in Krothapalli nor our holding here today prevents [the plaintiff] from obtaining documents that originated from sources other than [the hospital's] credentialing committee." 768 So.2d at 380.
The combined effect of these explanations inKrothapalli, Qureshi, and Anderson, is that we must hold that the trial court erred in ordering the Dental Board to produce the records specified in the court's June 27, 2005, order, as to which the defendants were denied a protective order by the court's October 3, 2005, order. Previto is entitled, however, to have Dr. Mendel produce in response to paragraph 18 of the Mendel subpoena all materials in his possession, as the original source, "which would in any way relate to any revocation, suspension, or termination of any medical or dental license held by [Dr. Mendel] in any State or Country," but only to the extent that those materials reflect, "with regard to" the pleaded claim of lack of informed consent, that Dr. Mendel's "license to practice dentistry has been suspended and/or revoked on multiple occasions," or, "with regard to" the pleaded fraudulent-misrepresentation claims, that Dr. Mendel's "license had been suspended in numerous States by governing dental boards and associations" or that Dr. Mendel "had been reprimanded by numerous dental review boards and had received suspensions and/or revocations in numerous States," and provided further that the bases for such suspensions and revocations reasonably implicate the professional skills required for the competent practice of dentistry.
 Conclusion
We grant the petition in part and deny it in part, and we direct the trial court to vacate its orders of June 27, 2005, and October 3, 2005, and to issue a protective order in favor of the defendants as to the materials Dr. Mendel produces, in conformity with our foregoing explanations and holdings concerning the permissible scope of discovery in this case.
PETITION GRANTED IN PART AND DENIED IN PART; WRIT ISSUED.
NABERS, C.J., and SEE, LYONS, WOODALL, STUART, SMITH, BOLIN, and PARKER, JJ., concur.