14 So.3d 830 (2009)
Ex parte GADSDEN COUNTRY CLUB.
(In re Steven P. Hurst v. Gadsden Country Club et al.).
1071270.
Supreme Court of Alabama.
January 16, 2009.
*831 C. Peter Bolvig and Carleton P. Ketcham III of Hall, Conerly & Bolvig, P.C., Birmingham, for petitioner.
Lawrence T. King of King, Horsley & Lyons, LLC, Birmingham, for respondent Steven P. Hurst and on behalf of Judge William A. Millican.
PER CURIAM.
Steven P. Hurst sued the Gadsden Country Club ("GCC") in the Etowah Circuit Court, alleging that his employment had been terminated in retaliation for his seeking worker's compensation benefits after suffering an on-the-job injury, in violation of § 25-5-11.1, Ala.Code 1975.[1] In its answer, GCC denied that Hurst had been terminated for filing a worker's compensation claim and stated that legitimate grounds existed for Hurst's termination, unrelated to any worker's compensation claim. In an answer to an interrogatory, GCC stated that Hurst was fired for leaving work after the accident that resulted in his on-the-job injury without first seeking medical attention, in violation of both his supervisor's instructions and GCC policy. Hurst thereafter moved the trial court to strike that "affirmative defense," arguing that it had been rejected in an administrative hearing conducted by the Department of Industrial Relations ("DIR") on Hurst's claim for unemployment benefits. The trial court granted Hurst's motion, and GCC now petitions this Court for mandamus relief, arguing that the trial court exceeded its discretion in striking that defense because, it argues, DIR did not, in fact, reject that defense. We deny the petition.

I.
In its decision on Hurst's unemployment-compensation claim, DIR described the relevant facts as follows:
"[Hurst] worked for [GCC] from 1999, until June 27, 2007. [Hurst] was injured as he fell going up stairs. The supervisor determined that the fall was serious enough to seek medical treatment. The company policy provides for medical treatment in case of an accident at the discretion of the supervisor. [Hurst] left the work site at 1:00 p.m., at the end of his shift. [Hurst] was in his car and [the] supervisor stopped him and told him that he needed to complete necessary paperwork related to his fall. [Hurst] went in to complete the paperwork but the supervisor could not find the proper forms. [Hurst] told him that while he was looking for the forms he needed to check on his father and he would return in approximately 20 minutes. [Hurst] returned to the work site approximately 40 minutes later and was discharged in accordance with company policy for refusing to get medical treatment and leaving the work site without permission. [Hurst] was aware of the policy as he received a copy at hire and the policy was updated during safety meetings. [Hurst] did not seek medical treatment because he did not feel that he was injured. [Hurst] had surgery already scheduled for July 11, 2007, on the shoulder that he fell on so he did not go to the doctor. [Hurst] denied the allegation that he refused to get medical treatment and that he left the work site without permission."
DIR denied Hurst's unemployment-compensation claim. On August 6, 2007, Hurst filed the underlying retaliatory-discharge action against GCC. On December 6, 2007, Hurst amended his complaint to add DIR as a defendant in order to appeal *832 the preliminary decision it had made denying his claim for unemployment benefits. DIR filed an answer stating that Hurst was "not physically able to work" and that he was "disqualified for receipt of unemployment compensation" pursuant to § 25-4-78(3), Ala.Code 1975, the subsection dealing with discharge for misconduct.
On March 17, 2008, Hurst filed two motionsa motion to dismiss DIR as a defendant because it had begun paying Hurst unemployment benefits and a motion to strike GCC's "affirmative defense" that his employment had been terminated because he left work after his accident without first seeking medical attention. Hurst argued that GCC had offered this same reason for terminating his employment during the DIR proceedings and that it had been rejected by the DIR administrative officer; therefore, he argued, because GCC had not appealed the DIR decision, it could not now seek to relitigate that issue. See, e.g., Wal-Mart Stores, Inc. v. Smitherman, 743 So.2d 442, 448 (Ala.1999) ("`To allow a plaintiff to raise the same issues in a subsequent lawsuit after having elected not to appeal from the administrative ruling would frustrate efforts to provide an orderly administration of justice and could encourage one to relitigate issues rather than have those issues finally resolved.'" (quoting Ex parte Smith, 683 So.2d 431, 436 (Ala.1996))).
GCC opposed Hurst's motion to strike, arguing that he was misinterpreting the DIR decision and that the DIR decision, in fact, supported GCC's position. The trial court, however, agreed with Hurst and granted his motion to strike on May 2, 2008.[2] On June 13, 2008, GCC petitioned this Court for mandamus relief, asking us to direct the trial court to vacate its order prohibiting GCC from asserting as an affirmative defense that Hurst's employment had been terminated as a result of his leaving work after an accident without first seeking medical attention. We deny the petition.

II.
In Ex parte Buffalo Rock Co., 941 So.2d 273, 277 (Ala.2006), this Court stated:
"`Mandamus is an extraordinary remedy and will be granted only where there is "(1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court."'
"Ex parte Ocwen Fed. Bank, FSB, 872 So.2d 810, 813 (Ala.2003) (quoting Ex parte Alfab, Inc., 586 So.2d 889, 891 (Ala.1991)). A trial court's disallowance of a party's affirmative defense is reviewable by a petition for a writ of mandamus. See Ex parte Neely Truck Line, Inc., 588 So.2d 484 (Ala.Civ.App. 1991)."
*833 In the present case, the parties dispute only whether GCC has a clear legal right to the relief it seeks and whether it has another adequate remedy.

III.
GCC argues that it has a clear legal right to the issuance of a writ of mandamus because the trial court's disallowance of its defense that Hurst was fired for reasons other than Hurst's filing a claim for worker's compensation benefits was a disallowance of an affirmative defense. Hurst argues that the writ of mandamus GCC seeks should not be issued because, he argues, GCC has an adequate remedy by way of appeal. Hurst supports this argument by citing Ex parte Sysco Food Services of Jackson, LLC, 901 So.2d 671 (Ala.2004), another retaliatory-discharge case, in which this Court considered an employer's petition for mandamus relief after the trial court had granted a motion in limine filed by a discharged employee barring the employer from introducing any evidence that the employee had been fired for committing dishonest or criminal acts in connection with his work; DIR had previously concluded during administrative hearings on the employee's claim for unemployment benefits that the employee had not acted dishonestly or criminally. This Court declined to consider the merits of the petition, noting instead that "review of an order granting or denying a motion in limine is by appeal." 901 So.2d at 674. We further noted that the employer had suggested other reasons for terminating the employee's employment and that it could still present evidence supporting those other reasons at trial. If, after that trial, the employer still desired to do so, it could then "appeal the propriety of the trial court's order granting the motion in limine." 901 So.2d at 676.
GCC argues that Ex parte Sysco is not directly relevant here because it concerned the proper method for seeking review of an order granting a motion in limine, and, in the present case, GCC seeks review of an order striking an affirmative defense. This Court in Ex parte Buffalo Rock, GCC notes, specifically stated that "[a] trial court's disallowance of a party's affirmative defense is reviewable by a petition for a writ of mandamus." 941 So.2d at 277. GCC is correct.
A petition for a writ of mandamus is a proper means to review the order of a trial court disallowing a party's affirmative defense. Ex parte Buffalo Rock. The question we must now answer is whether GCC's defense to Hurst's claim that he was fired solely for seeking worker's compensation benefits was an affirmative defense. In its answer, GCC denied that Hurst was fired for seeking worker's compensation benefits and stated that, instead, he was fired for legitimate grounds unrelated to his claim for worker's compensation benefits. The issue is whether this assertion was an affirmative defense so that this Court can review the trial court's disallowance of the defense on a petition for a writ of mandamus.
Hurst characterizes GCC's denial that Hurst was fired in retaliation for seeking worker's compensation benefits as an affirmative defense. This Court has defined an affirmative defense as "`[a] defendant's assertion of facts and arguments that, if true, will defeat the plaintiff's or prosecution's claim, even if all the allegations in the complaint are true.'" Lloyd Noland Found., Inc. v. HealthSouth, Inc., 979 So.2d 784, 791 (Ala.2007) (quoting Black's Law Dictionary 451 (8th ed.2004)). "An affirmative defense is defined as `new matter which, assuming the complaint to be true, constitutes a defense to it.'" Bechtel v. Crown Cent. Petroleum Corp., 451 So.2d 793, 795 (Ala.1984) (quoting *834 Black's Law Dictionary (rev. 5th ed.1979)). "A defendant's outright denial of the plaintiff's allegations without additional facts" is often referred to as a "negative defense." Black's 452 (8th ed.2004). In Ex parte Atmore Community Hospital, 719 So.2d 1190 (Ala.1998), this Court noted the difference between an "affirmative" defense and a "negative" defense as follows: An affirmative defense is distinguishable from a negative defense in that an affirmative defense raises new matters that, assuming the allegations in the complaint to be true, constitute a defense to the action and have the effect of defeating the plaintiff's claims on the merits while a negative defense simply seeks to refute an essential allegation of the plaintiff's complaint. 719 So.2d at 1193 n. 1.
To succeed on a retaliatory-discharge claim under § 25-5-11.1, Ala.Code 1975, a plaintiff must show: "1) an employment relationship; 2) an on-the-job injury; 3) knowledge on the part of the employer of the on-the-job injury; and 4) subsequent termination of employment based solely upon the employee's on the job injury and the filing of a workers' compensation claim." Alabama Power Co. v. Aldridge, 854 So.2d 554, 563 (Ala.2002). If GCC proves that Hurst was fired for legitimate grounds unrelated to his filing for worker's compensation benefits, Hurst's retaliatory-discharge claim will be defeated. However, that does not mean that GCC's defense that it had cause to fire Hurst was an "affirmative defense." The defense of "fired for cause" does not raise a new matter in a retaliatory-discharge claim. In contrast to a negative defense, an affirmative defense does not rebut any factual propositions asserted in the plaintiff's complaint but opens the way for the defendant to present evidence establishing an independent reason why the plaintiff may not recover. Because GCC's defense was not an affirmative defense, GCC does not have a clear legal right to the issuance of a writ of mandamus, and this Court must deny its petition for the writ.
PETITION DENIED.
LYONS, WOODALL, SMITH, and PARKER, JJ., concur.
BOLIN, J., concurs specially.
SEE, J., concurs in part and concurs in the result.
STUART and MURDOCK, JJ., dissent.
BOLIN, Justice (concurring specially).
I agree with the majority that GCC does not have a clear legal right to a writ of mandamus because GCC's defense is not an affirmative defense and I am disinclined to expand mandamus review to a defense other than an affirmative defense. However, I write to address whether the administrative officer for the Department of Industrial Relations ("DIR"), in ultimately awarding Hurst unemployment compensation, in fact rejected GCC's contention that Hurst's employment was terminated because he left work without seeking medical attention after his accident. The relevant portion of DIR's decision is as follows:
"Conclusions

"Section 25-4-78(3)(c)[, Ala.Code 1975,] provides for a disqualification if an individual is discharged from [his] most recent bona fide work for misconduct connected with work. `Misconduct' is conduct evincing a deliberate, willful, or wanton disregard of an employer's interests or of the standards of behavior which the employer has a right to expect of his employees. The preponderance of evidence shows [that Hurst] was discharged for violation of company policy when he refused to seek medical treatment after a fall at work and left the *835 premises without permission. [Hurst] denied the allegation that he refused to seek medical treatment or that he left the premises without permission. The employer bears the burden of proving misconduct indeed occurred. [GCC] has failed to provide sufficient evidence to show that [Hurst] committed misconduct. The evidence does not show a disregard of the employer's interests[;] thus, no misconduct was committed. Therefore, [Hurst] is not subject to disqualification under this section of law.
"Section 25-4-77(a)(3)[, Ala.Code 1975,] provides that an individual be physically and mentally able to perform work of a character which he is qualified to perform by past training or experience, and he is available for such work. [Hurst] bears the burden of showing that he is meeting the availability requirements. The preponderance of evidence shows [Hurst] has failed to provide medical evidence of his ability to work. Therefore [Hurst] does not meet the availability requirements of this section of law.
"Decision

"The examiner's determination is modified. The disqualification imposed under Section 25-4-78(3)(c) of the unemployment compensation law is removed and the reduction in the maximum amount of benefits payable is restored. [Hurst] is ineligible for benefits under the provisions of Section 25-4-77(a)(3) of the Law beginning July 15, 2007. This decision of ineligibility continues until [Hurst] adequately demonstrates to the local office that the availability requirements of the law are being satisfied. Upon such a showing [Hurst] may become entitled to benefits."
(Emphasis added.) When the decision of the DIR administrative officer is read as a whole, it is apparent that the administrative officer did not reject GCC's contention that Hurst's employment was terminated because he left work without seeking medical attention after his accident. To the contrary, the decision unambiguously states that "[t]he preponderance of evidence shows [that Hurst] was discharged for violation of company policy when he refused to seek medical treatment after a fall at work and left the premises without permission."
The confusion in this case apparently stems from the fact that, immediately after stating that Hurst's employment was terminated because he violated company policy, the DIR administrative officer nevertheless concludes that Hurst's actions did not rise to the level of "misconduct," as that term is used in DIR proceedings, because, the officer concluded, in leaving work, Hurst did not "evinc[e] a deliberate, willful, or wanton disregard of [his] employer's interests." This conclusion is consistent with the principle that every violation of company policy by an employee is not per se misconduct for purposes of § 25-4-78, Ala.Code 1975, a fact this Court has previously recognized in Ex parte Sargent, 634 So.2d 1008, 1010 (Ala. 1993).
Importantly, however, the conclusion of the DIR administrative officer that Hurst was not guilty of misconduct was not tantamount to a conclusion that GCC had not terminated Hurst's employment because he left work after his accident without seeking medical attention; rather, it was merely a conclusion that, even though he had done so, he was not guilty of "misconduct" as that term is used in DIR unemployment-compensation proceedings. Because DIR did not reject GCC's argument that Hurst's employment was terminated because he left work after his accident without first seeking medical attention, I *836 believe GCC is entitled to pursue that argument in defending itself from Hurst's retaliatory-discharge claim.
SEE, Justice (concurring in part and concurring in the result).
The main opinion concludes that GCC's defense is not an affirmative defense and that, because it is not, the trial court's order striking it is not reviewable by a petition for the writ of mandamus. See 14 So.3d at 834. ("Because GCC's defense was not an affirmative defense, GCC does not have a clear legal right to the issuance of a writ of mandamus, and this Court must deny its petition for the writ."). I agree that GCC's defense is not an affirmative defense. I further agree that the petition for the writ of mandamus should be denied. I disagree, however, that this case turns on whether GCC's defense is an affirmative defense. Therefore, I concur in the rationale in part and concur in the result.
However the parties choose to characterize GCC's defense, the trial court's order is, in its practical effect, a ruling on a motion in limine as to the admissibility of evidence. See Petition at Exhibit K (trial court's order, stating: "Defense is precluded from offering evidence that [Hurst] would be fired for leaving work without permission and refusing medical treatment"). As a general rule, an appeal, not a petition for the writ of mandamus, is the proper method by which to seek review of an order granting or denying a motion in limine. See Ex parte Sysco Food Servs. of Jackson, LLC, 901 So.2d 671, 674 (Ala. 2004) ("Alabama precedent has established that review of an order granting or denying a motion in limine is by appeal.").
The rule that the review of an order granting or denying a motion in limine is by appeal, however, does not appear to be absolute. In Ex parte Sysco, Sysco argued that mandamus relief was appropriatenotwithstanding the general rule to the contrarybecause, it argued, "the trial court's order `"effectively preclud[es] a decision on the merits ... so that ... the outcome has been all but determined, and the petitioner would be merely going through the motion of a trial to obtain an appeal."'" 901 So.2d at 675 (quoting Ex parte Ocwen Fed. Bank, FSB, 872 So.2d 810, 813-14 (Ala.2003)). The Court addressed Sysco's argument, concluding:
"Therefore, despite Sysco's contention, the outcome of the trial in the retaliatory-discharge action has not all but been determined; although the trial court's ruling on the motion in limine prevents Sysco from presenting evidence indicating that [the employee] was discharged for committing a dishonest or criminal act addressed in the unemployment-benefits trial, Sysco may still present evidence of other reasons it had, if any, for discharging [the employee]. Thus, Sysco is not effectively precluded from a decision on the merits, and if Sysco so desires after the trial in the retaliatory-discharge action, it can appeal the propriety of the trial court's order granting the motion in limine. Consequently, appeal, not a petition for a writ of mandamus, is the proper forum for review of that order."
901 So.2d at 675-76. This language indicates that Sysco would have been entitled to a writ of mandamus had it demonstrated that the trial court's order effectively had all but determined the outcome of the trial and that it therefore would merely be going through the motions of a trial in order to obtain an appeal.[3] Such a result *837 would have been consistent with other decisions of this Court in which a preliminary ruling by the trial court, in effect, deprived a party of its opportunity to defend itself, that is, effectively denied it a meaningful trial. See Ex parte Ocwen, 872 So.2d at 813-14 (noting that review by a petition for the writ of mandamus is appropriate in a discovery context "when the trial court either imposes sanctions effectively precluding a decision on the merits or denies discovery going to a party's entire action or defense so that, in either event, the outcome has been all but determined, and the petitioner would be merely going through the motions of a trial to obtain an appeal").
In this case, GCC's sole argument is that the trial court has wrongly denied its affirmative defense and, thus, that GCC is entitled to the writ of mandamus. It argues that, "GCC has no other adequate remedy at law, since its defense is premised upon the affirmative defense that Hurst was terminated for violation of company policy." Petition, at 16-17. Thus, GCC argues that the trial court is wrong, but it does not argue that the trial court's order effectively precludes a decision on the merits such that the outcome of the case has been all but determined, or that GCC will be merely going through the motions of a trial in order to obtain an appeal. GCC does not adopt the analysis of Sysco and argue that its situation is precisely one that this Court had identified as an exception to the general rule that review of a ruling on a motion in limine is not by mandamus. Instead, GCC attempts to distinguish Sysco from this case on the ground that this case, unlike Sysco, involves an affirmative defense. See GCC's reply brief, at 5.
GCC has not argued that it is entitled to mandamus review because the trial court's order effectively precludes a decision on the merits such that the outcome has been all but determined and that it will be merely going through the motions of a trial in order to obtain an appeal; neither has GCC demonstrated that this issue may be reviewed by a petition for the writ of mandamus. Therefore, I agree with the main opinion that the petition for the writ of mandamus should be denied.
STUART, Justice (dissenting).
I agree with Justice Bolin's analysis in his special concurrence on the issue whether the hearing officer for the Department of Industrial Relations addressed and rejected GCC's argument that Hurst's employment was terminated because he left work after his accident without first seeking medical attention and, thus, whether GCC is entitled to pursue this argument below. I, however, would go further and grant the petition for the writ of mandamus. Not permitting the evidence or defense goes to the heart of the matter and almost certainly is outcome-determinative. Therefore, I respectfully dissent.
MURDOCK, Justice (dissenting).
Like Justice Stuart, I acknowledge the distinction drawn by Justice Bolin in his special concurrence between the issue whether Hurst's acts constituted "misconduct" for purposes of being disqualified *838 from receiving unemployment benefits under § 25-4-78(3) and the issue whether Hurst's acts constituted a violation of company policy that would serve as a proper basis for terminating his employment. 14 So.3d at 837 (Bolin, J., concurring specially and citing Ex parte Sargent, 634 So.2d 1008, 1010 (Ala.1993)).
In addition, there is the distinction between an administrative adjudication of the issue whether Hurst actually committed improper acts of whatever nature and the issue whether GCC, in good faith, believed that Hurst had committed those acts and whether that belief was the reason it terminated Hurst's employment. Although Hurst seeks to rely upon this Court's decision in Ex parte Sysco Food Services of Jackson, LLC, 901 So.2d 671 (Ala.2004), this Court explained in Sysco:
"At [the employee's] trial on his claim seeking unemployment benefits, the trial court found not only that [the employee] had not committed any dishonest or criminal acts, but also that `[the employee] was not terminated for committing any dishonest or criminal act in connection with his work as alleged by the Department [of Industrial Relations] and/or Sysco.' Consequently, Sysco is precluded from offering any evidence indicating that it terminated [the employee's] employment based upon its belief that [the employee] had committed a dishonest or criminal act."
901 So.2d at 675.[4] Here, in contrast, the administrative agency specifically found, as Justice Bolin explains, that Hurst's violation of company policy was the reason GCC terminated Hurst's employment.
Beyond the foregoing, the decision in Sysco was based on the fact that the exclusion of the proffered defense would not mean that the employer would merely be going through the motion of a trial to obtain an appeal because there were other defenses the employer could assert:
"Sysco, ... quoting [Ex parte ]Ocwen Federal Bank, [FSB, 872 So.2d 810 (Ala. 2003),] argues that mandamus relief is appropriate in this case because, it says, the trial court's order "`effectively preclud[es] a decision on the merits ... so that ... the outcome has been all but determined, and the petitioner would be merely going through the motion of a trial to obtain an appeal.'" Ocwen Federal Bank, 872 So.2d at 813-14.
". . . .
"Because Sysco can present evidence indicating that the termination of [the employee's] employment was causally related to his poor performance, poor work attendance, or other misconduct arising from the November 20 incident or other incidents that might justify termination, the trial court's favorable ruling on [the employee's] motion in limine does not result in Sysco's `merely going through the motions of a trial to obtain an appeal.' Ocwen Federal Bank, 872 So.2d at 814."
901 So.2d at 675.[5]
In the present case, however, there do not appear to be other defenses GCC can *839 assert at trial. GCC argues to this Court that its defense is premised on its position that it terminated Hurst's employment for violating the company policies at issue. GCC also argues that it will be irreparably harmed if it is not allowed to present its defense to Hurst's retaliatory-discharge claim. I agree. The trial court's order has "`effectively preclud[ed] a decision on the merits ... so that ... the outcome has been all but determined, and the petitioner would be merely going through the motion of a trial to obtain an appeal.'" Sysco, 901 So.2d at 675 (quoting Ocwen Fed. Bank, 872 So.2d at 814). See also Ex parte United States Gypsum Co., 533 So.2d 557 (Ala.1988) ("The probability that the trial court's error would require U.S. Gypsum to go through a second trial following reversal on appeal following a trial outweighs any prejudice that the plaintiffs face by way of having to defend against the matters raised in the original pre-trial motions.").
Based on the foregoing, I conclude GCC's petition for the writ of mandamus should be granted; therefore, I respectfully dissent.
NOTES
[1] Section 25-5-11.1 provides, in relevant part, that "[n]o employee shall be terminated by an employer solely because the employee has instituted or maintained any action against the employer to recover workers' compensation benefits ...."
[2] The order entered by the trial court granting Hurst's motion to strike stated that it was striking GCC's "affirmative defense" that Hurst "voluntarily quit." Hurst subsequently filed a motion to clarify, arguing that the trial court had, as a result of a scrivener's error in his motion to strikewhich error had been specifically acknowledged at the hearing on the motioninadvertently stricken an affirmative defense that GCC had not even made (i.e., that Hurst had voluntarily quit his employment with GCC) instead of the intended defensethat Hurst's employment had been terminated because he violated his supervisor's instructions and GCC policy by leaving work after an accident without first receiving medical attention. On May 7, 2008, the trial court granted the motion to clarify that it was striking GCC's defense that Hurst was "fired for leaving work without permission and refusing medical treatment."
[3] I dissented from the main opinion in Ex parte Sysco because it appeared to me that Sysco had sufficiently demonstrated that it was entitled to the writ of mandamus. See Ex parte Sysco, 901 So.2d at 677 ("However, if Sysco is precluded from offering in this retaliatory-discharge action the evidence that formed the basis of its belief that [Sysco's employee] had deviated from his delivery route without permission, that he had lied to his supervisor about it, and that he had falsified his transportation logthe only reasons it asserts for having discharged [the employee]the case has been `all but determined.' Therefore, pursuant to Ocwen, review by appeal is inadequate and mandamus relief is appropriate." (See, J., dissenting)).
[4] In his dissenting opinion joined by Chief Justice Nabers, Justice See contended in Sysco that, although "[the employee] established in his unemployment-compensation case that he did not commit the dishonest or criminal acts of which he was accused, and for the purposes of this retaliatory-discharge action that factual finding has been established," "Sysco may still assert that at the time it discharged [the employee] Sysco believed in good faith that Calvert had committed those dishonest or criminal acts." 901 So.2d at 677 (See, J., dissenting) (citing Tyson Foods, Inc. v. McCollum, 881 So.2d 976, 978 (Ala. 2003)).
[5] In his dissenting opinion in Sysco, Justice See differed with the majority as to whether the employer had any defenses other than those the trial court had effectively excluded from the trial; he reached the same conclusion as the main opinion with respect to the legal principles applicable to such a circumstance:

"We have held that review by appeal may be inadequate when
"`the trial court's order either imposes sanctions effectively precluding a decision on the merits or denies discovery going to a party's entire action or defense so that, in either event, the outcome has been all but determined, and the petitioner would be merely going through the motions of a trial to obtain an appeal.'
"Ex parte Ocwen Fed. Bank, FSB, 872 So.2d 810, 813-14 (Ala.2003).
". . . .
"... [I]f Sysco is precluded from offering in this retaliatory-discharge action the evidence that formed the basis of its belief that [the employee] had deviated from his delivery route without permission, that he had lied to his supervisor about it, and that he had falsified his transportation logthe only reasons it asserts for having discharged [the employee]the case has been `all but determined.' Therefore, pursuant to Ocwen, review by appeal is inadequate and mandamus relief is appropriate."
901 So.2d at 677 (See, J., dissenting).