Michael Goodson was admitted to the psychiatric unit of AMI West Alabama General Hospital on February 21, 1989, allegedly under the primary care of Allie C. Boyd, M.D., a psychiatrist. Goodson committed suicide four days later, on February 25, 1989. Goodson was admitted suffering from painful and acute paranoid disturbances related primarily to his admittedly homosexual lifestyle, his fear and paranoia that he was infected with the AIDS virus, and an intense feeling of guilt resulting from a fear that he had perhaps passed on the virus to one or more of his married homosexual partners, and, subsequently, to their children. Goodson's mother, Willita Zoellner, who, as administratrix of his estate, brought a wrongful death action against AMI and Dr. Boyd, does not dispute this description of his condition upon admission to AMI.
In her wrongful death action, Mrs. Zoellner alleges that the defendants were negligent *Page 485 
in treating her son; specifically, she alleges that based upon the information they had, or should have had, concerning Goodson's mental condition, the defendants' treatment of him fell below the appropriate standard of care in treating, housing, and supervising him in the psychiatric unit at AMI.
Dr. Boyd had never met Goodson before his admission to AMI. For many years prior to his death, Goodson had lived in Boston, Massachusetts. Dr. Boyd served on Mrs. Zoellner interrogatories and requests for production of documents, seeking information about her son's history, his close personal friends, and potential witnesses in this case. In response, Mrs. Zoellner identified several people, all of whom live in or near Boston, as personal friends of her son. She also identified a psychologist, also located in Boston, who had previously treated her son. AMI then noticed the depositions of the Boston psychologist and the persons identified in response to Dr. Boyd's interrogatories. AMI filed motions to take these depositions by videotape pursuant to Rule 30(b)(4), Ala.R.Civ.P. Mrs. Zoellner promptly filed a motion to quash the depositions of the Boston residents and a motion for a protective order. After a hearing, the trial court granted the plaintiff's motion to quash all of the depositions except that of the treating psychologist. The defendants, AMI and Dr. Boyd, seek a writ of mandamus requiring the trial judge to vacate his order quashing the depositions of the Boston residents and to enter an order allowing the depositions to proceed by stenographic means for discovery purposes, subject to any protective order necessary to protect confidentiality.
The underlying lawsuit is a wrongful death action seeking punitive damages for the defendants' alleged negligence in treating the plaintiff's decedent. The defendants contend that the history of the decedent supplied by him and his mother, the plaintiff in this suit, supplied the essential basis of the treatment they administered to him. The decedent was unknown to the defendants, and the only people who did know him lived in the Boston area. He was in Alabama visiting his mother at the time of his admission to AMI. After three days in the hospital, he was allowed to leave the psychiatric unit for a "home visit." He was found dead in his hospital room after the home visit. He apparently committed suicide by placing a plastic trash container liner over his head, tying a rope around his neck and the plastic liner, and hanging himself from the door. The plaintiff alleges that despite a clear record of suicidal potential, the defendants took no steps to place the patient under any kind of suicide observation, and, therefore, that the defendants' treatment of the decedent fell below acceptable standards.
The defendants contend that they are entitled to take the depositions of those persons who can provide additional information about the decedent. They argue that, to the extent that the information supplied by the decedent and his mother upon his admission to the hospital was false or incomplete, it could create a contributory negligence defense to the wrongful death action.
Rule 26(b)(1), A.R.Civ.P., provides:
 "Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. It is not grounds for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence."
This rule contemplates a broad right of discovery. Discovery should be permitted if there is any likelihood that the information sought will aid the party seeking discovery in the pursuit of his claim or defense. Discovery is not limited to matters that would be admissible as evidence *Page 486 
in the trial of the lawsuit. Ex parte Dorsey Trailers, Inc.,397 So.2d 98 (Ala. 1981). A trial judge, who has broad discretion in this area, should nevertheless incline toward permitting the broadest discovery and utilize his discretion to issue protective orders to protect the interests of parties opposing discovery. Wright and Miller express this notion in the following language:
 "[I]t is not too strong to say that a request for discovery should be considered relevant if there is any possibility that the information may be relevant to the subject matter of the action. If protection is needed, it can better be provided by the discretionary powers of the Court under Rule 26(c) than by a constricting concept of evidence."
8 C. Wright A. Miller, Federal Practice and Procedure § 2008, at 46-47 (1970).
It is true, as the plaintiff points out, that while mandamus is the proper means of review to determine whether a trial court has abused its discretion in discovery matters, and that the writ is seldom issued because the trial judge possesses great discretion in discovery matters, Ex parte Mack,461 So.2d 799, 801 (Ala. 1984), we venture to suggest that the writ issues more often in instances where the trial court has restricted or prohibited discovery than in instances where liberal discovery has been allowed. This is so because Rule 26, Ala.R.Civ.P., permits such broad discovery and Rule 26(c) supplies a safeguard, by way of protective orders, that allows the trial court to prevent any party from abusing the discovery process.
We note that in this case the trial judge expressed his belief in full and liberal discovery, but granted the plaintiff's motion to quash. His reason for doing so may have been based upon the defendants' argument advanced in opposition to the plaintiff's motion to quash. According to the plaintiff's brief, which is uncontested, the defendants argued before the trial judge that the objective of the depositions was to "show the jury the lifestyle that the deceased led." In support of their petition for writ of mandamus, the defendants have abandoned this argument and argue instead that they are entitled to discover anything that might help them establish a defense of contributory negligence. They do not contend in this Court that they intend to "show the jury the lifestyle that the deceased led." They seem to acknowledge that Goodson's lifestyle would not be relevant as to the amount of punitive damages, if any, to which the plaintiff would be entitled in an action based on wrongful death.
The plaintiff stated in her motion to quash:
 "Michael Goodson was admittedly gay. According to the evidence, he had sexual relations with other men during his life. The Plaintiff suspects that the Defendant desires to take videotaped depositions in an attempt to ascertain further intimate knowledge about the lifestyle of Michael Goodson. However, such information not available to the Defendants in this case during the treatment of Michael Goodson, is totally irrelevant and would only be submitted in an attempt to prejudice a jury against the deceased to lessen damages in the case. Moreover, if that is the purpose of the depositions, it is a total and needless invasion of the privacy of these citizens sought to be deposed."
Both arguments assume that information discovered by way of the depositions will be admitted into evidence. The decedent's "lifestyle" has no bearing on the amount of damages that may be awarded under Alabama law in a wrongful death action. The trial judge is learned in the law and is capable of keeping prejudicial information from the jury on the trial of this case. The defendants state here that "Counsel for both Defendants offer[ed] to consent to the most stringent of protective orders, to seal the depositions, to limit the scope of questioning, and any other reasonable restriction in order to proceed with the depositions."
In adopting liberal discovery rules, this Court, like other courts in this country, did so believing that lawyers, being officers of the court, would cooperate with each other in the best interests of their clients and would not abuse the process. Experience *Page 487 
has shown that such has not always been the case. Some lawyers do abuse the process, at great expense to their clients and to the great frustration of the trial bench. The lawyers involved in this case are respected members of the bar. The trial judge is a wise and experienced trial judge. Together they can and should reach an agreement on the scope of the questioning and the extent to which any information discovered should be protected. In their quest to discover information about the decedent in this case, the defendants' lawyers have no right to invade the privacy of citizens who may have known him. They are entitled to learn anything that might aid them in defense of the lawsuit against them, but no more than that. The plaintiff has admitted that the decedent was a homosexual and that he had had sexual relations with men, some of whom were married and had children. The defendants have no right to know who these people were, because such knowledge cannot possibly aid them in the defense of this case. They might learn from the people who knew him things about Michael Goodson that they do not now know and that might either help in defending the case or lead to information that would. For example, suppose it is discovered that the decedent was addicted to drugs, and this fact had not been disclosed to the defendants; or suppose it is discovered that the decedent had attempted suicide many times before, and this had not been disclosed to the defendants; this is the kind of information that Rule 26 allows the defendants to discover. The trial court, with the cooperation of the lawyers for both sides, should fashion an order that will preserve the purpose of Rule 26, without invading the privacy of any third party to this litigation. It should also determine whether any or all information discovered on deposition of these parties should be sealed. And, finally, the trial court will determine what evidence is admissible on the trial of this case.
Except for construing Rule 26 and the other discovery rules found in the Rules of Civil Procedure to accomplish the purpose of those rules, this Court is ill equipped to decide discovery disputes. There should be few such disputes, because lawyers acting professionally should be able to agree on most discovery issues, but, when they can not, the trial courts are necessarily in a better position to decide discovery disputes and to control the discovery process to prevent abuse by either side. We have no doubt that the lawyers and trial judge in this case can do exactly that.
WRITS GRANTED CONDITIONALLY.
HORNSBY, C.J., and MADDOX, ALMON, ADAMS, HOUSTON, STEAGALL, KENNEDY and INGRAM, JJ., concur.