PER CURIAM.
This extraordinary-writ petition arising from a divorce action in the Mobile Circuit Court involves the scope of discovery as to a spouse’s interest in a professional corporation.
In June 2008, Alesia G. Hartley (“the wife”) sued Jeffrey J. Hartley (“the husband”), seeking a divorce and requesting, among other things, “an equitable division of the assets and liabilities acquired during the marriage” and awards of periodic alimony and alimony in gross. During the course of those proceedings, the wife caused to be issued a subpoena directed to the managing partner of the law firm of which the husband was a member, Helms-ing, Leach, Herlong, Newman & Rouse, P.C. (“the law firm”); that subpoena, as amended, sought the production of “all personnel records, payroll records, and copies of contracts of employment” involving the husband, including information regarding any retirement plan in which the husband had participated and “records evidencing the ownership by [the husband] of any interest in the [law] firm.” The law firm then filed a motion to intervene as a party, asserting that the wife had sought discovery of information that was, the law firm said, “confidential and proprietary in nature”; the wife filed a response in opposition to that motion. The trial court entered an order denying the motion to intervene; in that order, the trial court directed that certain documents were to be made available to the wife’s attorney and were otherwise to be kept absolutely confidential, including “any records of monies that are due to [the husband] and a reasonable amount of the partnership records so that [the wife’s attorney] may have an idea of what the [husband’s] partnership interest may be worth for purposes of this divorce.”
Among the documents produced in response to the wife’s subpoena and the trial court’s order denying intervention was a “buy-sell agreement” adopted by the law firm in 1997 that, in pertinent part, provided (1) that no shareholder in the law firm was to convey any shares of the law firm to any person not connected to the law firm; (2) that, upon the death, retirement, or termination of the employment by the firm of any shareholder, the shareholder would be required to sell his or her shares to the law firm for $10 each; and (3) that all future shareholders of the law firm would be bound by the agreement. The wife’s attorney subsequently sought the issuance of a second subpoena to the law firm directing the production of documents showing, for example, the husband’s hours worked, the law firm’s principal clients, the law firm’s accounts receivable and unbilled work, the law firm’s financial statements and records of bonus payments, and details of shareholder buybacks for the preceding 10 years. The husband objected to the second subpoena on the basis that the buy-sell agreement rendered irrelevant, as an evidentiary matter, the materials sought from the law firm. After a hearing, the trial court received written briefs from the parties; the husband contended that “valuation of a professional spouse’s interest in a law firm must be based on the formula or calculation set forth in the stock purchase agreement,” whereas the wife posited that the value of an interest in a closely held business, such as the law firm, is not limited to the value stated in a buy-sell agreement, and she argued that all evidence concerning the value of the *1104 husband’s interest in the law firm was relevant.
The trial court entered an order on May 22, 2009, sustaining the husband’s objection to the second subpoena except as to the matter of “the financial compensation of the husband,” indicating its agreement with the husband’s view. That order provided, in pertinent part:
“For purposes of the trial, the Court does note that the relevant information for a fair division of assets is the husband’s compensation from the firm. If he stays at the firm, the husband has no significant benefit in being a partner beyond his monetary compensation, benefits which will be reflected in his tax returns and job security. If he leaves the firm, he has contractually agreed to get $1000.00. If the firm dissolves in the future, the speculative value of any profit or loss cannot be determined at this point.”
The wife sought mandamus review of that order in this court within a presumptively reasonable time (see Rule 21(a)(3), Ala. R.App. P.), and we directed the filing of answers and briefs.
“Mandamus is an extraordinary remedy and will be granted only where there is ‘(1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court.’ [An appellate court] will not issue the writ of mandamus where the petitioner has ‘ “full and adequate relief’ ’ by appeal.
“Discovery matters are within the trial court’s sound discretion, and [an appellate court] will not reverse a trial court’s ruling on a discovery issue unless the trial court has clearly exceeded its discretion. Accordingly, mandamus will issue to reverse a trial court’s ruling on a discovery issue only (1) where there is a showing that the trial court clearly exceeded its discretion, and (2) where the aggrieved party does not have an adequate remedy by ordinary appeal. The petitioner has an affirmative burden to prove the existence of each of these conditions.
“... In certain exceptional cases, however, review by appeal of a discovery order may be inadequate, for example, ... when the trial court ... denies discovery going to a party’s entire action or defense so that ... the outcome has been all but determined, and the petitioner would be merely going through the motions of a trial to obtain an appeal. ... The burden rests on the petitioner to demonstrate that its petition presents such an exceptional case — that is, one in which an appeal is not an adequate remedy.”
Ex parte Ocwen Fed. Bank, FSB, 872 So.2d 810, 813-14 (Ala.2003) (citations omitted).
The husband contends that mandamus is not an appropriate vehicle for review of the trial court’s order, and he suggests that the wife should be required to await an appeal from a final judgment of divorce. We believe, however, that the trial court’s order essentially forecloses any further discovery, as well as any further presentation of evidence at trial, concerning the issue of the value of the husband’s interest in the law firm. Because one of the principal components of the relief sought by the wife in her divorce action was, as is true in many divorce actions, an equitable distribution of property acquired by the parties during the marriage, and because the trial court’s order, in essence, refused to acknowledge the existence of any potential grounds for dispute as to the value of what may prove *1105 to be a significant marital asset, we conclude that the order challenged by the wife falls within the exception noted in Ocwen pertaining to “discovery going to a party’s entire action or defense so that ... the outcome has been all but determined.” 872 So.2d at 813-14.
Under Rule 26(b)(1), Ala. R. Civ. P., a party to a civil action, such as the wife in the divorce action pending in the trial court, “may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action,” and a discovery request is not generally due to be refused simply because “the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.” As noted by our Supreme Court in Ex parte AMI West Alabama General Hospital, 582 So.2d 484, 485-86 (Ala.1991), “[djiscovery should be permitted if there is any likelihood that the information sought will aid the party seeking discovery in the pursuit of his claim or defense,” and trial judges should “incline toward permitting the broadest discovery and utiliz[ing their] discretion to issue protective orders to protect the interests of parties opposing discovery.” In this regard, we note that the trial court, before issuing its May 22, 2009, order, had previously indicated agreement with the course of action recommended in AMI, directing the law firm to produce numerous documents sought in the wife’s first subpoena, as amended, but directing that those documents were to be deemed absolutely confidential.[1]
However, it remains to be decided whether the material sought by the wife falls within the scope of discovery permitted under Rule 26(b)(1). The husband’s submissions to this court reiterate his position that because, in his view, the value of the husband’s partnership interest in the law firm is limited by the buy-sell agreement to $1,000, no evidence sought by the wife can be relevant to any material issue at trial. The wife counters by invoking what she terms the “majority rule” prevailing in American jurisdictions to the effect that the value set forth in a shareholder’s buy-sell agreement is not conclusive as to the ultimate issue of the value of the shareholder’s interest and that, therefore, other discoverable evidence may rebut any presumption that may apply that such an agreement states the true value of the pertinent shareholder’s interest.
After the parties had filed in this court their briefs in support of their competing positions, this court issued its opinion on application for rehearing in Grelier v. Grelier, 44 So.3d 1092 (Ala.Civ.App.2009). In Grelier, this court considered the correctness of a trial court’s imposition of “minority” and “marketability” discounts upon the value of a divorcing spouse’s interests in a number of closely held business entities; we held that the trial court had erred in so ruling. Of particular importance to this case was our determination that valuation in divorce actions is to be based upon a “fair value” concept and not necessarily a “fair-market value” principle:
“Alabama law has not adopted a ‘fair market value’ standard for assessing marital property. Rather, under Alabama law, a trial court must determine the value of property with the only limitation being that the value must be equitable under the circumstances of the particular case. See generally Yohey v. *1106 Yohey, 890 So.2d 160 (Ala.Civ.App.2004). That standard implies that the valuation must be fair to all parties concerned. See generally Blank’s Law Dictionary 578 (8th ed.2004) (defining ‘equitable distribution’ as the ‘fair ... allocation’ of marital property). In cases in which a divorce court does not contemplate the sale of a business in which one of the spouses holds a minority interest but, instead, intends that the business shall remain a going concern, it makes little sense to determine fair value by the measuring stick of a hypothetical sales pnce. That methodology would artificially reduce the value of the marital asset in almost every case, which would be unfair, i.e., inequitable, to the party receiving only a portion of the reduced value or the property equivalent to that reduced value but would be advantageous to the party retaining the business interest, including its actual value to him or her as the holder.”
Grelier, 44 So.3d at 1097 (emphasis added).
We then quoted from and discussed at length Brown v. Brown, 348 N.J.Super. 466, 792 A.2d 463 (App.Div.2002), a leading New Jersey appellate opinion applying that state’s precedents construing “fair value” in the context of awarding compensation of dissenting shareholders to a situation involving a dispute concerning the value of a divorcing spouse’s ownership of a closely held business. Grelier, 44 So.3d at 1098. We further noted that, after Brown had been decided, our Supreme Court, in Ex parte Baron Services, Inc., 874 So.2d 545 (Ala.2003), had recognized a similar distinction between “fan* value” and “fair-market value” in the dissenting-shareholder context based upon the same line of New Jersey cases that had been relied upon by Brown. Grelier, 44 So.3d at 1098. We concluded that, “[b]ecause the Alabama Supreme Court has adopted the same reasoning that is applied in New Jersey in dissenting-shareholder cases, it seems reasonable to conclude that it would follow the same reasoning in divorce cases involving minority ownership of closely held business organizations.” 44 So.3d at 1098.
We need not, in order to evaluate the correctness of the trial court’s order, conclusively determine for all cases the proper valuation of an ownership share of a partnership of legal-service providers. Rather, we hold that because the crucial inquiry to be undertaken by a trial court in a divorce action is to determine the fair value of the parties’ assets rather than to adhere in all cases to their “fair-market value,” i.e., to the price that the general market might assign to them, discovery that is propounded by a party to such an action that is reasonably calculated to obtain information that would inform a particular witness’s opinion concerning an asset’s “fair value” is within the scope of Rule 26(b)(1). In the words of Grelier, the trial court’s May 22, 2009, order erroneously prevented the wife from obtaining discoverable materials because that order, in effect, determined the “fair value” of the husband’s partnership interest in the law firm solely “by the measuring stick of a hypothetical sales price” provided in the buy-sell agreement, even though the law firm will almost certainly “remain a going concern” for an extended period after a final judgment is rendered in this particular case. That is the very position that we noted, in our decision on rehearing in Gre-lier, “makes little sense.” 44 So.3d at 1097.
The wife’s petition for a writ of mandamus is granted. The writ is issued to direct the trial court to vacate its May 22, 2009, order and to further direct that court to overrule the husband’s objection to the *1107 wife’s second subpoena directed to the law firm.
PETITION GRANTED; WRIT ISSUED.
THOMPSON, P.J., and PITTMAN, J., concur.
BRYAN, J., concurs specially, joined by THOMAS, J.
MOORE, J., recuses himself.

. In the spirit of that order, we have endeavored to limit our specific references to material contained in any attachments to the wife’s mandamus petition to the minimum necessary to decide the questions presented.