872 So.2d 810 (2003)
Ex parte OCWEN FEDERAL BANK, FSB.
(In re Lee Dowdle and Kimberly Dowdle v. Aurora Loan Services, Inc., et al.)
1002225.
Supreme Court of Alabama.
March 28, 2003.
As Modified on Denial of Rehearing August 29, 2003.
*811 Forrest S. Latta, Goodman G. Ledyard, W. Perry Hall, and Michael D. Strasavich of Pierce, Ledyard, Latta, Wasden & Bowron, P.C., Mobile; and Charles A. Langley of Holder, Moore, Lawrence & Langley, P.C., Fayette, for petitioner.
R. Cooper Shattuck and Jane L. Calamusa of Rosen, Cook, Sledge, Davis, Cade & Shattuck, P.A., Tuscaloosa, for respondent.
SEE, Justice.
Ocwen Federal Bank, FSB ("Ocwen"), petitions this Court for the writ of mandamus directing Judge James Moore of the Fayette Circuit Court to vacate his order, dated August 15, 2001, denying Ocwen's motion for a protective discovery order. Ocwen argues that the trial court erred (1) by ordering "pattern and practice" discovery, and/or (2) by failing to tailor the discovery order to protect Ocwen's interests and those of its customers. We deny the petition.

I.
On June 24, 1998, Lee Dowdle and Kimberly Dowdle executed a promissory note, secured by a mortgage on their home, to Johnson & Associates Mortgage Company, Inc. ("Johnson"). The truth-in-lending disclosure statement they received in connection with the execution of the note provided that a penalty would not be assessed if they paid the loan off before its maturity date.[1] Johnson assigned its rights under the promissory note and mortgage to Morcap, Inc. ("Morcap").
*812 Aurora Loan Services, Inc. ("Aurora"), began to service the Dowdles' loan on Morcap's behalf. In April 1999, the Dowdles decided to refinance their loan with a different lender. In order to refinance, the Dowdles had to pay off their original note before its maturity date. When the Dowdles received the payoff balance from Aurora, it included a prepayment penalty. The Dowdles sent a check to Aurora for the payoff balance after deducting an amount for the prepayment penalty. Aurora returned the check to the Dowdles because, it stated, the amount of the check was insufficient to pay off their loan. The Dowdles sent the check to Aurora again. This time, Aurora accepted it but stated that it would continue to seek collection of the prepayment penalty.
On July 23, 1999, the Dowdles sued Aurora, Southern Pacific Funding Corporation,[2] Johnson, Morcap, and other fictitiously named defendants. As amended, the Dowdles' complaint alleges misrepresentation; suppression; breach of contract; breach of fiduciary duty; negligence; wantonness; intentional infliction of emotional distress; violations of Alabama's Mini-Code, § 5-19-1 et seq., Ala. Code 1975; conspiracy; money paid by mistake; conversion; and defamation. The Dowdles also sought to certify a class.
In September 1999, after Ocwen replaced Aurora as the servicer of the Dowdles' loan, the Dowdles began receiving statements from Ocwen. The first statement the Dowdles received from Ocwen showed that they owed $3,948.63; that amount included interest in the amount of $933.49. After receiving the statement, the Dowdles contacted Ocwen to inform it that the debt was the subject of a legal action and that they were represented in that action by legal counsel. On October 19, 1999, the Dowdles' attorney sent a letter to Ocwen, explaining that the debt it was attempting to collect from the Dowdles was disputed and was the subject of pending litigation. Nonetheless, Ocwen continued to send the Dowdles monthly statements, increasing the past-due amount by $1,091.49 each month[3] and assessing the Dowdles a late charge. Ocwen also contacted certain credit agencies to inform them that the Dowdles were delinquent in paying the amounts they owed it.
On May 2, 2000, the Dowdles amended their complaint to add Ocwen as a defendant. On June 2, 2000, the Dowdles submitted interrogatories and document requests to all the defendants. On June 28, 2000, Ocwen moved for a protective order to stay discovery; the trial court conditionally granted the order on September 11, 2000, pending receipt of discovery from the remaining defendants. The trial court lifted the stay on February 6, 2001. On March 19, 2001, the trial court entered a discovery scheduling order, requiring the completion within 120 days of all discovery concerning the merits of the Dowdles' claims and the certification of the purported class.
On May 14, 2001, Ocwen filed a response to the Dowdles' June 2, 2000, discovery request. That response contained a general objection to each of the Dowdles' requests. On May 21, 2001, Ocwen moved for a protective order to stay discovery until the trial court decided whether to certify the purported class. On May 31, 2001, the Dowdles moved to compel Ocwen *813 to respond to the outstanding discovery request. On August 15, 2001, the trial court denied Ocwen's motion for a protective order and granted, with limitations,[4] the Dowdles' motion to compel. On September 26, 2001, Ocwen petitioned this Court for the writ of mandamus. On October 22, 2001, we ordered answer and briefs.

II.
Mandamus is an extraordinary remedy and will be granted only where there is "(1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court." Ex parte Alfab, Inc., 586 So.2d 889, 891 (Ala.1991). This Court will not issue the writ of mandamus where the petitioner has "`full and adequate relief'" by appeal. State v. Cobb, 288 Ala. 675, 678, 264 So.2d 523, 526 (1972) (quoting State v. Williams, 69 Ala. 311, 316 (1881)).
Discovery matters are within the trial court's sound discretion, and this Court will not reverse a trial court's ruling on a discovery issue unless the trial court has clearly exceeded its discretion. Home Ins. Co. v. Rice, 585 So.2d 859, 862 (Ala. 1991). Accordingly, mandamus will issue to reverse a trial court's ruling on a discovery issue only (1) where there is a showing that the trial court clearly exceeded its discretion, and (2) where the aggrieved party does not have an adequate remedy by ordinary appeal. The petitioner has an affirmative burden to prove the existence of each of these conditions.
Generally, an appeal of a discovery order is an adequate remedy,[5] notwithstanding the fact that that procedure may delay an appellate court's review of a petitioner's grievance or impose on the petitioner additional expense; our judicial system cannot afford immediate mandamus review of every discovery order. See Walker v. Packer, 827 S.W.2d 833, 842 (Tex.1992) ("Mandamus disrupts the trial proceedings, forcing the parties to address in an appellate court issues that otherwise might have been resolved as discovery progressed and the evidence was developed at trial."). In certain exceptional cases, however, review by appeal of a discovery order may be inadequate, for example, (a) when a privilege is disregarded, see Ex parte Miltope Corp., 823 So.2d 640, 644-45 (Ala. 2001) ("If a trial court orders the discovery of trade secrets and such are disclosed, the party resisting discovery will have no adequate remedy on appeal."); (b) when a discovery order compels the production of patently irrelevant or duplicative documents, such as to clearly constitute harassment or impose a burden on the producing party far out of proportion to any benefit that may obtain to the requesting party, see, e.g., Ex parte Compass, 686 So.2d 1135, 1138 (Ala.1996) (request for "every customer file for every variable annuity" including annuity products the plaintiff did not purchase); (c) when the trial court either imposes sanctions effectively precluding a decision on the merits or denies discovery going to a party's entire action *814 or defense so that, in either event, the outcome has been all but determined, and the petitioner would be merely going through the motions of a trial to obtain an appeal; or (d) when the trial court impermissibly prevents the petitioner from making a record on the discovery issue so that the appellate court cannot review the effect of the trial court's alleged error. The burden rests on the petitioner to demonstrate that its petition presents such an exceptional casethat is, one in which an appeal is not an adequate remedy. See Ex parte Consolidated Publ'g Co., 601 So.2d 423, 426 (Ala.1992). We deny Ocwen's petition because Ocwen has not demonstrated to this Court that an appeal would not afford it a full and adequate remedy.

III.
Ocwen argues first that "pattern and practice" discovery is inappropriate and overly burdensome in this case because, Ocwen claims, the Dowdles have no sustainable fraud claim against it. Thus, mandamus is arguably appropriate because the discovery order compels the production of patently irrelevant or duplicative documents, such as to clearly constitute harassment or impose a burden on the producing party far out of proportion to any benefit that may obtain to the requesting party.
Ocwen contends it did not commit fraud in regard to the Dowdles because the undisputed evidence in the case shows that the Dowdles could not have reasonably relied on Ocwen's alleged misrepresentation. The Dowdles' failure to offer evidence of their reliance on Ocwen's allegedly false representations, however, is a basis on which Ocwen could have moved for a summary judgment on the Dowdles' misrepresentation claim.[6] Therefore, granting Ocwen's petition for a writ of mandamus on this basis would be the functional equivalent of this Court's entering an unsolicited summary judgment for Ocwen on the Dowdles' misrepresentation claim. Moreover, because the trial court has not made any findings of fact as to this argument, issuing the writ of mandamus on the basis that the Dowdles failed to offer evidence of their reliance on Ocwen's misrepresentations would be substituting our judgment for that of the trial court. Because Ocwen has not succeeded in moving for a summary judgment in the trial court, Ocwen has not shown that the trial court exceeded its discretion in denying its motion for a protective order.
Ocwen next argues that disclosure of its customer lists would be oppressive and overly burdensome.[7] As plaintiffs in a fraud action, the Dowdles are "entitled to *815 broader discovery than would normally be allowed." Ex parte Henry, 770 So.2d 76, 80 (Ala.2000).
"`When the discovery request of a plaintiff alleging fraud is closely tailored to the nature of the fraud alleged, the discovery should be allowed in full, as long as the party opposing discovery does not show that the requested discovery is oppressive or overly burdensome.'"
770 So.2d at 80 (quoting Ex parte Horton, 711 So.2d 979, 983 (Ala.1998)).
In the Henry case, a life-insurance company credited a policyholder for only 5 policy payments, although she had made 12. The policyholder sued the life-insurance company and its agent, alleging misrepresentation, deceit, and fraudulent suppression. During discovery, the policyholder submitted interrogatories to the life-insurance company requesting the name of every person who since 1992 had purchased a policy from the life-insurance company through the particular agent who sold the policyholder her policy. The trial court limited the policyholder's request to the names of persons in Alabama who had purchased such policies. The policyholder then petitioned the Court for a writ of mandamus. We held that the trial court properly limited the policyholder's discovery requests to the names of persons in Alabama.
Similarly, in this case the trial court restricted to five years the period as to which the Dowdles were entitled to discovery and limited the scope of their discovery to Ocwen's customers who lived in Alabama or whose collateral was located in Alabama. The limitations imposed by the trial court in this case are not markedly different from those imposed by the trial court in Henry. Ocwen has not demonstrated that the discovery order is overly burdensome or oppressive to it, and we do not so conclude.
Ocwen also argues that the trial court's order requiring it to produce a list of prior consumer-protection or financing-agency complaints against it and a list of lawsuits brought during the past five years is unduly burdensome.[8] However, this argument is unsupported by the evidence.[9] "[A] general statement of inconvenience" does not provide the court with a sufficient basis for finding that a discovery request is oppressive or burdensome. Ex parte Union Sec. Life Ins. Co., 723 So.2d 34, 39 *816 n. 1 (Ala.1998). Without more specific allegations regarding the Dowdles' requests number 12 and 13 (see note 8), we cannot conclude that the trial court's discovery order imposes such a burden or expense on Ocwen as to be oppressive.

IV.
The trial court ordered Ocwen to "[p]roduce any and all documents ... which address or refer to the assessment, calculation, or collection of any penalty prepayment [sic], finance charge or other fee or charge in addition to the principal sum...." Ocwen argues that the method by which it assesses, calculates, and collects prepayment penalties is entitled to protection from disclosure because, it says, that method is a trade secret. As we note above, relief by an appeal from a trial court's order in disregard of a privilege, such as requiring disclosure of a trade secret, may be inadequate. "`Once the [trade-secret] information becomes available through the discovery process, a subsequent appeal, even if successful, cannot restore [its] valuable secretive nature.'" Miltope, 823 So.2d at 645 (quoting Nester v. Lima Mem'l Hosp., 139 Ohio App.3d 883, 888, 745 N.E.2d 1153, 1157 (2000) (Walters, J., dissenting)).
The mere recitation, however, that certain information is a trade secret does not automatically bestow immunity from disclosure. "[T]o receive protection under the [Alabama Trade Secrets Act]" the person or entity attempting to exercise the privilege must show that the information sought to be protected satisfies the definition of a trade secret.[10] Cmt. to § 8-27-2, Ala.Code 1975.
In Miltope, we held that a company was not required to produce board minutes and sales orders because those documents contained trade secrets. 823 So.2d at 645. A key factor in our decision in Miltope was that the company seeking trade-secret protection specifically demonstrated why the minutes of its board of directors and its sales orders were trade secrets. Ocwen fails to show in its petition how the manner in which it assesses, calculates, and collects prepayment penalties is a trade secret. Therefore, Ocwen has failed to demonstrate that it is entitled to trade-secret protection.[11]

V.
Because Ocwen has not demonstrated that the trial court clearly exceeded its discretion in denying Ocwen's motion for a protective order and that an appeal would be an inadequate remedy in this case, it has not demonstrated a clear legal right to the extraordinary relief it seeks.[12] Consequently, *817 we deny Ocwen's petition for the writ of mandamus.
PETITION DENIED.
HOUSTON, LYONS, BROWN, JOHNSTONE, HARWOOD, and STUART, JJ., concur.
MOORE, C.J., and WOODALL, J., concur in the result.
MOORE, Chief Justice (concurring in the result).
This Court has stated: "Ordinarily, we would not review rulings regarding discovery proceedings in the trial courts." Ex parte Dorsey Trailers, Inc., 397 So.2d 98, 102 (Ala.1981). Further:
"The utilization of a writ of mandamus to compel or prohibit discovery is restricted because of the discretionary nature of a discovery order. The right sought to be enforced by mandamus must be clear and certain with no reasonable basis for controversy about the right to relief. The writ will not issue where the right in question is doubtful. Lassiter v. Werneth, 275 Ala. 555, 156 So.2d 647 (1963)."
397 So.2d at 102. It is not the business of this Court to look over the shoulder of a trial judge or to question every decision a judge makes just because a party is dissatisfied. The mere fact that this Court is designated the "Supreme" Court does not mean that a nine-member court is wiser or more intelligent than a trial judge, especially when the trial judge has the opportunity to observe the parties and the witnesses and has to deal with discovery matters on a daily basis.
Historically, discovery matters were generally not the subject of a writ of mandamus, as illustrated in Ex parte Alabama Power Co., 280 Ala. 586, 196 So.2d 702 (Ala.1967). In that case this Court stated:
"A Petition for Mandamus constitutes a first pleading in the case and the petition itself must show by averments a right to have the act complained of performed, and if the averments do not show such a right, the petition should be dismissed, although those averments are not controverted or denied. Lawson v. Swift, 280 Ala. 227, 191 So.2d 379 [(1966)], Paragraphs 2 and 3.
"This is nonetheless true although Alabama seems to have enlarged the scope or field for the issuance of the writ of mandamus as shown by the provisions of Section 1072 of Title 7 of the Alabama Code[[13]] and the annotations under the heading `Mandamus,' under said Section 1072 of Title 7 of the Alabama Code (Volume 3 of the Code, Page 1050) as well as by the cases of Ex parte Tower Mfg. Co., 103 Ala. 415, 15 So. 836 [(1894) ]; Wilson v. Duncan, 114 Ala. 659, 672, 21 So. 1017 [ (1897) ], and Ex parte Laurie, 277 Ala. 137, 140, 167 So.2d 705, 707 [ (1964) ]. But we need not decide whether or not a writ of mandamus is always limited to cases where an abuse of discretion is shown on the part of the lower tribunal. The question here is whether or not the issuance of a writ of mandamus is so limited where the rulings sought to be reviewed are under the deposition statute.
"In such cases we think that the issuance of the writ is limited to those where an abuse of discretion is shown. See Ex parte Cypress, 275 Ala. 563, 156 So.2d 916 [ (1963) ], Paragraphs 4 and 5 where Mr. Justice Harwood states: `However, even under a liberal interpretation of *818 our deposition-discovery statute, we are unwilling to say that the court abused its discretion in the above ruling.'
"The principle is expressed in 23 Am. Jur.2d on Page 665, Section 270, as follows:
"`It is for the trial court, not the appellate court, to pass upon any specific question presented on an application for discovery or upon any question when a particular requirement is too broad. Generally, the trial court's execution of this discretion in applying of discovery rules or in deciding whether or not to order or limit discovery will not be disturbed unless an abuse of such discretion is shown.'
"The Alabama statute is patterned after Federal Rule 26(b) and our courts have heeded the construction placed upon the Federal Rule. In `Judicial Control Over Discovery,' 28 F.R.D. 111, 116, Judge Kaufman said
"`The whole discovery procedure contemplates an absence of judicial intervention in the run-of-the-mill discovery attempt.'
"Speaking of the resort to mandamus under the federal rules, Prof. Moore (Vol.4, p. 1743) quotes the United States Supreme Court as saying:
"`In strictly circumscribing piecemeal appeal, Congress must have realized that in the course of judicial decision some interlocutory orders might be erroneous. The supplementary review power conferred on the courts by Congress in the All Writs Act is meant to be used only in the exceptional case where there is clear abuse of discretion or, "usurpation of judicial power."'2
"2"Bankers Life & Cas. Co. v. Holland, 346 U.S. 379, 383-384, 74 S.Ct. 145, 98 L.Ed. 106 [(1953)]."
280 Ala. at 589, 196 So.2d at 704-05.
While I agree with the holding of the majority and sympathize with the rationale it uses as an attempt to provide guidelines that limit the abusive filing of petitions for a writ of mandamus in discovery matters, I do not agree that creating a rule under which such petitions may be considered by this Court is wise. Unless strictly construed, exceptions tend to swallow the rule, leading to even greater abuse. This Court itself should be able to restrict the abuse of using petitions for a writ of mandamus in discovery matters by restricting the use of extraordinary writs to extraordinary instances and by recognizing that an appeal is in almost all cases an adequate remedy.
Therefore, I concur only in the result.
WOODALL, Justice (concurring in the result).
The Dowdles submitted a discovery request to Ocwen on June 2, 2000. Because Ocwen failed to object to the discovery in a timely manner, it waived the right to object in its May 14, 2001, response to the discovery request and in its petition for a writ of mandamus. Therefore, Ocwen has not shown a clear legal right to have the trial court vacate its order denying Ocwen's motion for a protective order. Seeing no reason for this Court to address any other issue, I respectfully concur only in the result.
NOTES
[1] Ocwen claims that the promissory note did allow for the assessment of a prepayment penalty.
[2] It is not clear from the facts submitted by the parties how Southern Pacific Funding Corporation is connected to the refinancing transaction.
[3] This amount included "principal and interest" of $933.49 and an escrow charge of $158.
[4] The trial court limited the Dowdles' discovery request to loans serviced or held by Ocwen during the five years before it was added as a defendant in the case. Alternatively, if Ocwen could not respond to the discovery request, as limited, the trial court further limited the request to those loans the debtors for which were residents of Alabama or for which the property securing the loans was located in Alabama.
[5] "Writs of mandamus and prohibition ... are extraordinary remedies and will not ordinarily afford appellate review of discovery orders." 6 Moore's Federal Practice § 26.07[4] (Matthew Bender 3d ed.) (December 2002) (footnotes omitted).
[6] We note that in the trial court's August 15, 2001, order denying Ocwen's motion for a protective order, the trial court also denied Ocwen's motion for a summary judgment. Ocwen does not include in its petition a copy of the summary-judgment motion; therefore, we do not know on what basis it moved for a summary judgment. The petitioner has the responsibility of supplying the Court with those parts of the record that are essential to an understanding of the issues set forth in the mandamus petition. Rule 21(a), Ala. R. App. P. Because Ocwen has not supplied the Court with an adequate record as to the basis on which it moved for a summary judgment, this Court is unwilling to engage in conjecture as to what that basis might have been.

Nonetheless, a petition for the writ of mandamus in this instance is not the proper vehicle for appealing the denial of motion for a summary judgment. Subject to narrow exceptions that are not applicable in this case, "a writ of mandamus will not issue to review the merits of an order denying a motion for a summary judgment." Ex parte Liberty Nat'l Life Ins. Co., 825 So. 2d 758, 762 (Ala. 2002) (citations omitted). If Ocwen is dissatisfied with the part of the order denying its motion for a summary judgment, then it has an adequate remedy by way of an appeal.
[7] The Dowdles requested the following disclosure:

"2. List the names, addresses and telephone numbers of all individuals in Alabama executing promissory notes and/or giving mortgages held or serviced by [Ocwen] since January 1, 1990.
"3. List the names, addresses and telephone numbers for each individual who has paid off, satisfied or refinanced since January 1, 1990 any promissory note held or serviced by [Ocwen].
"[Supp.] 3. Identify (list the name, address and telephone number) each borrower for whom you originated, assessed, demanded or collected a pre-payment penalty, for the pre-payment of a loan, whether secured by a mortgage or not, in the State of Alabama, since January 1, 1990."
[8] The Dowdles' discovery request with regard to production of this information read:

"12. Have you ever been charged, investigated or had any inquiries by any consumer protection or financing agency or department or ever been charged (officially or unofficially, formally or informally, by a governing or enforcement authority or otherwise) with a violation of any rules, regulations, or guidelines of consumer protection or financing agency or department? If so, state the details of each.
"13. Have you been sued in the past five (5) years? If so, state the details of each lawsuit, including but not limited to the court in which the lawsuit was pending, the case or docket number, the parties to the lawsuit and the claims made in the lawsuit."
[9] Ocwen has not submitted evidence of the burden, if any, of producing the lists of consumer-agency complaints and lawsuits.
[10] Section 8-27-2(1), Ala.Code 1975, states:

"A `trade secret' is information that:
"a. Is used or intended for use in a trade or business;
"b. Is included or embodied in a formula, pattern, compilation, computer software, drawing, device, method, technique, or process;
"c. Is not publicly known and is not generally known in the trade or business of the person asserting that it is a trade secret;
"d. Cannot be readily ascertained or derived from publicly available information;
"e. Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy; and
"f. Has significant economic value."
[11] We also note that the privilege is not absolute. Rule 507, Ala. R. Evid., provides that a "person has a privilege ... to refuse to disclose... a trade secret ... [only] if the allowance of the privilege will not tend to conceal fraud or otherwise work injustice."
[12] Because we conclude that the trial court did not exceed its discretion in denying Ocwen's motion for a protective order, we do not address the Dowdles' claim that Ocwen waived any objections to their discovery request by failing to object in a timely manner. See Rule 34(b), Ala. R. Civ. P.
[13] Now § 6-6-640, Ala. Code 1975.