BOLIN, Justice.
*42 Locklear Chrysler Jeep Dodge, LLC, and Locklear Automotive Group, Inc. (hereinafter referred to collectively as "Locklear"), seek a writ of mandamus ordering the Bibb Circuit Court to vacate certain discovery orders in actions filed against Locklear by Rhonda Cook, James McKinney, and James Daniel Parker (hereinafter referred to collectively as "the purchasers"), who allege that they were victims of identity theft by a Locklear employee.
Facts and Procedural History
In order to explore the possibility of financing the purchase of an automobile from Locklear, the purchasers each completed a credit application. The credit applications contained personal information, including Social Security numbers, birth dates, mother's maiden names, income, etc. In connection with the purchase, each purchaser signed an arbitration agreement titled "Binding Pre-Dispute Arbitration Agreement" ("the arbitration agreement"); its operative language is as follows:
"In connection with the undersigned's acquisition or attempted acquisition of the below described vehicle, by lease, rental, purchase or otherwise, the undersigned and the dealer whose name appears below, stipulate and agree, in connection with the resolution of any dispute arising out of, or relating to, resulting from or concerning any contracts or agreements, or agreements or contracts to be entered into by the parties, all alleged representations, promises and covenants, issues concerning compliance with any state or federal law or regulation, and all relationships resulting therefrom, as follows: That the vehicle, services, and products (hereinafter 'products') involved in the acquisition or attempted acquisition are regulated by the laws of the United States of America; and/or, that the contract(s) and agreements entered into by the parties concerning said products evidence transactions and business enterprises substantially involving and affecting interstate commerce sufficiently to invoke the application of the Federal Arbitration Act, 9 U.S.C. § 1, etseq. The undersigned agree that all disputes not barred by applicable statutes of limitations, resulting from, arising out of, relating to or concerning the transaction entered into or sought to be entered into (including but not limited to: any matters taking place either before or after the parties entered into this agreement, including any prior agreements or negotiations between the parties; the terms of this agreement and all clauses herein contained, their breadth and scope, and any term of any agreement contemporaneously entered into by the parties; the past, present and future condition of any products at issue; the conformity of the products to any contract description; the representations, promises, undertakings, warranties or covenants made by the dealer, its agents, servants, employees, successors and assigns, or otherwise dealing with the products; any lease, sale or rental terms or the terms of credit and/or financing in connection therewith; or compliance with any state or federal laws; any terms or provisions of any insurance sought to be purchased or purchased simultaneously herewith; any terms or provisions of any extended service to be purchased or purchased herewith) shall be submitted to BINDING
*43 ARBITRATION, pursuant to the provisions of 9 U.S.C. § 1, etseq. and according to the Commercial Dispute Resolution procedures and/or Consumer Protocol (depending on the amount in controversy) of the American Arbitration Association (the AAA) then existing in the county where the transaction was entered into or sought to be entered into, except as follows: (a) In all disputes in which the matter in controversy (including compensatory and punitive damages, fees and costs) is more than $10,000 but less than $75,000.00, one arbitrator shall be selected in accordance with the AAA's Consumer Protocol. In all disputes in which the matter in controversy (including compensatory and punitive damages and fees and costs) is $75,000.00 or more, the parties to this agreement shall select an arbitrator under the AAA's Commercial Rules and shall select one arbitrator from a list of at least 5 suitable arbitrators supplied by the AAA in accordance with and utilizing the AAA strike method. (b) An arbitrator so selected shall be empowered to enter an award of such damages, fees and costs, and grant such other relief, as is allowed by law. The arbitrator has no authority or jurisdiction to enter any award that is not in conformance with controlling law. Any party to this agreement who fails or refuses to arbitrate in accordance with the terms of this agreement may, in addition to any other relief awarded, be taxed by the arbitrator with the costs, including reasonable attorney's fees, of any other party who had to resort to judicial or other relief in compelling arbitration. In the event the dealer and the undersigned customer(s) have entered into more than one arbitration agreement concerning any of the matters identified herein, the undersigned customers and the dealer agree that the terms of this arbitration agreement shall control disputes between and among them. Any provision in this Agreement found to be in conflict with any procedure promulgated by the AAA which shall affect its administration of disputes hereunder, shall be considered severed herefrom. With respect to the process of arbitration under the AAA Commercial Rules or Consumer Protocol, the undersigned customer(s) and the dealer expressly recognize that the rules and protocol and the terms of this agreement adequately protect their abilities to fully and reasonably pursue their respective statutory and other legal rights. If for any reason the AAA fails or refuses to administer the arbitration of any dispute brought by any party to this agreement, the parties agree that all disputes will then be submitted to binding arbitration before the Better Business Bureau (the BBB) serving the community where the Dealer conducts business, under the BBB binding arbitration rules.... This agreement shall survive any termination, cancellation, fulfillment, or non-fulfillment of any other contract, covenant or agreement related to the products acquired or sought to be acquired from the Dealer, including, but not limited to cancellation due to lack of acceptable financing or funding of any retail installment contract or lease. Further information about arbitration can be obtained directly from the AAA or from a review of AAA's Commercial Dispute Resolution Procedures and Consumer Protocol, and/or the BBB's Binding Arbitration Rules, copies of which are available without charge for review from the AAA and the BBB. THE UNDERSIGNED HAVE AGREED TO WAIVE THE UNDERSIGNED(S)' RIGHT TO A TRIAL BY JUDGE OR JURY IN ALL DISPUTES OVER $10,000.00 AND THAT ARBITRATION SHALL BE IN
*44 LIEU OF ANY CIVIL LITIGATION IN ANY COURT AND IN LIEU OF ANY TRIAL BY JUDGE OR JURY FOR ALL CLAIMS OVER $10,000.00. THE TERMS OF THIS AGREEMENT AFFECT LEGAL RIGHTS. IF YOU DO NOT UNDERSTAND ANY PROVISION OF THIS AGREEMENT OR THE COSTS, ADVANTAGES OR DISADVANTAGES OF ARBITRATION, SEEK INDEPENDENT ADVICE AND/OR REVIEW THE WRITTEN CONSUMER AND/OR COMMERCIAL DISPUTE RESOLUTION PROCEDURES AND PROTOCOLS AND/OR CONTACT THE AAA OR BBB BEFORE SIGNING. BY SIGNING YOU ACKNOWLEDGE THAT YOU HAVE READ, UNDERSTAND AND AGREE TO BE BOUND BY EACH OF THE PROVISIONS, COVENANTS, STIPULATIONS AND AGREEMENTS SET FORTH AND REFERENCED HEREINABOVE.
"DESCRIPTION OF PRODUCTS/SERVICES: ________________"
(Capitalization and emphasis in original.)
In the blank line following the words "DESCRIPTION OF PRODUCTS/SERVICES" typically was printed the year and model of the vehicle to be purchased as well as the vehicle-identification number of that vehicle. Below that were lines for the date to be filled in and lines for signatures of the customer and a dealer representative. Each of the purchasers signed the arbitration agreement in December 2015.
In July and August 2016, each of the purchasers sued Locklear, as well as other defendants. Each purchaser alleged that he or she was the victim of identity theft by an employee of Locklear's who used the personal information from the purchaser's credit application to purchase thousands of dollars in cellular-telephone services. They asserted claims of negligence, wantonness, invasion of privacy, conversion, fraud, tort of outrage, civil conspiracy, violations of Alabama's Consumer Identity Protection Act, and breach of fiduciary duty. Shortly after filing their lawsuits, the purchasers sought general discovery, including interrogatories, requests for production of documents, requests for admissions, and notices of deposition. The general discovery requests regarded matters related to the purchasers' substantive claims.
In response to the three actions, Locklear filed a motion in each action seeking an order compelling arbitration and staying the action. The trial court held a hearing on the motions, but did not rule on them.
Subsequently, each of the purchasers filed a motion to compel Locklear's responses to their discovery requests and to deem admitted their requests for admissions. The trial court granted the purchasers' motions. Locklear then filed three petitions for mandamus review, which this Court consolidated for the purpose of writing one opinion. While the mandamus petitions were pending, the trial court granted Locklear's motions to stay discovery.
Standard of Review
"Mandamus is an extraordinary remedy and will be granted only where there is '(1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court.' Ex parte Alfab, Inc., 586 So.2d 889, 891 (Ala. 1991). This Court will not issue the writ of mandamus where the petitioner has " 'full and adequate relief' " by appeal. State v. Cobb, 288 Ala. 675, 678, 264 So.2d 523, 526 (1972) (quoting State v. Williams, 69 Ala. 311, 316 (1881) ).
"Discovery matters are within the trial court's sound discretion, and this *45 Court will not reverse a trial court's ruling on a discovery issue unless the trial court has clearly exceeded its discretion. Home Ins. Co. v. Rice, 585 So.2d 859, 862 (Ala. 1991). Accordingly, mandamus will issue to reverse a trial court's ruling on a discovery issue only (1) where there is a showing that the trial court clearly exceeded its discretion, and (2) where the aggrieved party does not have an adequate remedy by ordinary appeal. The petitioner has an affirmative burden to prove the existence of each of these conditions."
Ex parte Ocwen Fed. Bank, FSB, 872 So.2d 810, 813 (Ala. 2003).
Discussion
Locklear argues that, although discovery may be allowed while a motion to compel arbitration is pending, that discovery is limited to whether the parties to the arbitration agreement must arbitrate their claims. Locklear argues that the trial court exceeded its discretion in allowing general discovery regarding the merits of the purchasers' claims. Locklear argues that permitting general discovery to proceed in a case that may be subject to arbitration could frustrate one of the purposes underlying arbitration, namely, the inexpensive and expedient resolution of disputes.
Locklear cites Ex parte Kenworth of Birmingham, Inc., 789 So.2d 227 (Ala. 2000), in support of its position. In Kenworth, the plaintiffs sued Kenworth and its salesman, asserting claims arising out of the purchase of a truck. They alleged that the salesman had represented that the truck was new, when, in fact, the truck had been used and damaged, had been repaired, had had parts replaced, and had been repainted to appear new. Kenworth and the salesman answered the complaint, raising several affirmative defenses and asserting that the plaintiffs' claims were subject to arbitration. They moved to stay the proceedings and to compel arbitration, attaching a copy of a "Buyer's Order" that contained an arbitration provision. In response to the motion to compel, the plaintiffs asserted that they did not recall an arbitration provision in the paperwork underlying the sale of the truck and that the signature on the paperwork was not theirs.
On the day of the hearing on the motion to stay and to compel arbitration, Kenworth and the salesman moved in open court to continue the hearing and requested leave to conduct discovery. The trial court rescheduled the hearing on the motion to compel arbitration and ordered that discovery would not be stayed pending the hearing, nor would discovery be limited to the issue of the genuineness of the signature on the buyer's order containing the arbitration provision.
Both sides in Kenworth filed notices of depositions. A week before the scheduled depositions, Kenworth and the salesman moved for what they called a "reconsideration" and to stay discovery, arguing that they had made a prima facie showing that the arbitration provision was enforceable. The trial court denied that motion and further stated that " 'there is no "prima facie showing that the arbitration agreement is enforceable." ' " 789 So.2d at 229. The court then reset the hearing on the motion to compel arbitration. Kenworth and the salesman petitioned this Court for the writ of mandamus before the hearing could be held. They argued that the trial court exceeded its discretion by allowing unrestricted discovery before a resolution of the question whether the plaintiffs must arbitrate their claims. This Court agreed, holding that, although the trial court did not err in allowing the parties to conduct discovery, it did err in failing to restrict that discovery to the question whether the plaintiffs had agreed to arbitrate their dispute with Kenworth and the salesman.
*46 We note that, in the instant case, this Court is not reviewing a trial court's order denying a motion to compel arbitration; the trial court has not yet ruled on Locklear's motion to compel. It is the trial court's general discovery orders that are being challenged. Here, as in Kenworth, the trial court exceeded its discretion by allowing general discovery before the resolution of the issue whether the purchasers must arbitrate their claims. In Ex parte Jim Burke Automotive, Inc., 776 So.2d 118 (Ala. 2000), this Court explained that, although it was not error for the trial court to allow the parties to conduct discovery prior to arbitration, it was error not to limit the discovery to the question whether the plaintiff agreed to arbitrate his claims and that such limited discovery did not constitute a waiver of the right to arbitrate. Here, the purchasers have not requested discovery on an issue related to the arbitration agreement; instead, they sought general discovery regarding the merits of their claims. In granting the purchasers' requests for general discovery before the resolution of Locklear's arbitration motions, the trial court exceeded its discretion. Furthermore, because it would be unfair to require Locklear conduct merit-based discovery prior to deciding the arbitration issue, and because Locklear could not be afforded the relief it seeks after that discovery has been conducted, Locklear does not have an adequate remedy by ordinary appeal. Accordingly, we grant the petitions and issue the writs, directing the trial court to vacate its orders requiring Locklear to respond to the purchasers' discovery requests, including the requests for admissions and to sit for depositions.
1160372-PETITION GRANTED; WRIT ISSUED.
1160373-PETITION GRANTED; WRIT ISSUED.
1160374-PETITION GRANTED; WRIT ISSUED.
Stuart, C.J., and Parker, Murdock, Shaw, Main, Wise, Bryan, and Sellers, JJ., concur.